Peter R. and Joan B. Shibley v. Commissioner.
Shibley v. Commissioner
Docket No. 5094-69.
United States Tax Court
T.C. Memo 1971-139; 1971 Tax Ct. Memo LEXIS 194; 30 T.C.M. (CCH) 597; T.C.M. (RIA) 71139; June 15, 1971, Filed Lyman T. Burgess, for the petitioners. Joel Gerber, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies and additions to tax in petitioners' income tax as follows: Addition to Tax,
Sec. 6653(a),
Year
Deficiency
I.R.C. 1954
1965
$ 2,013.94
$100.69
1966
13,697.44
684.87
The principal issue is whether two apartment houses owned by petitioner Peter R. Shibley *195 were held "primarily for sale to customers in the ordinary course of his trade or business" within the meaning of section 1221, I.R.C. 1954, with the consequence that gain upon sale would be treated as ordinary income rather than capital gain. Findings of Fact The parties have filed a stipulation of facts which, together with accompanying exhibits, is incorporated herein by this reference. The petitioners, Peter R. and Joan B. Shibley, are husband and wife. They filed joint Federal income tax returns for calendar years 1965 and 1966 with the district director of internal revenue at Boston, Massachusetts, and resided in Agawam, Massachusetts, at the time the petition in this case was filed. Petitioners reported their income and deductions for the years in issue on the cash method of accounting. For a number of years prior to 1964 and until October, 1967, petitioner Peter R. Shibley ("Shibley") was in the business of selling used automobiles. It was a small used car sales business and he "never handled more than six or seven $200 or $300 cars" at any one time. He operated the business on a lot at 721 Springfield Street in Agawam, Massachusetts, a suburb of Springfield. In late *196 1963 Agawam had a population of around 12,000 to 14,000 people and Springfield Street was one of the two major streets in the town. Although Shibley originally leased the lot at 721 Springfield Street for a term of five years this lease had expired 598 by late 1963 and he continued to lease the property thereafter on a month to month basis. Shibley believed that the person from whom he leased the lot on which he conducted his used car business intended to build a shopping center on the land. Because he wanted to maintain his used car business on the same street, he purchased another lot in late 1963 at 619 Springfield Street for $2,200. When he purchased this lot, it was his intention to move his business on to this property if he should be forced to vacate 721 Springfield Street. However, about seven or eight months after purchasing the lot at 619 Springfield Street, Shibley decided to build a small apartment building on the vacant property instead. At that time he thought that an apartment house was a good investment because of the rentals which such property returned. Construction of the apartment building began in May or June, 1964, and Shibley acted as his own general contractor. *197 It was completed in October, 1964, and as completed the apartment building ("Stockdale Apartments") consisted of ten fully furnished efficiency apartments. Shibley financed the building through a long-term mortgage loan obtained from a bank. A provision of the mortgage loan required Shibley to pay a penalty to the bank if he sold the property within four years after completion of the building. This provision was intended to protect the bank against an early loss of the mortgage loan because of the possible refinancing of the property by the purchaser with another institution. In December, 1964, about two months after completion of the Stockdale Apartments, Shibley purchased another lot at 873 Springfield Street for $7,500. At the time he purchased this lot he understood that a permissible use of the land, under the applicable zoning laws or regulations, was for business purposes, and he also intended to use this lot in his used car sales business. After purchasing the property he made inquiries of a member of the Board of Selectmen of Agawam about the possibility of using the property for a used car lot. He was told that the previous owner had made a similar request and was refused *198 permission. As a result Shibley made no formal application of his own to the Board of Selectmen concerning such use of the land. During the period when he was building the Stockdale Apartments Shibley devoted most of his time to the project, though he did continue in the used car sales business as well. After the building was completed management of the apartment house also occupied much of his time. Shibley thought that a second apartment building would allow him to "get out of the car business and just be in the apartment business." Accordingly, in 1965 he built a 28-unit apartment on the vacant lot at 873 Springfield Street. This building was completed in November, 1965. He again acted as his own general contractor, and also financed this building in the same manner as the Stockdale Apartments. When it was completed, the apartment building ("Town Crier Apartments") consisted of about 20 fully furnished efficiency apartments and several fully furnished, small, one-bedroom apartments. During the construction of the Town Crier Apartment building in 1965 Shibley again was required to devote most of his time to the project. While he was building and operating the two apartment buildings *199 Shibley regarded himself as being, and was in the "apartment business" - the ownership and management of apartments. However, management of the buildings presented many difficulties with which Shibley found himself unable to cope. Moreover, during the period of time that he owned the Stockdale Apartments he incurred a loss in its operation of $369. He had net rental income of $2,875 in 1965 from the Town Crier Apartment building; but he sustained a $3,040 net loss in 1966 on that property prior to its sale as hereinafter set forth. Sometime before August, 1965, while he was involved in construction of the Town Crier Apartments, Shibley was approached by a real estate agent named Binda about selling the Stockdale Apartments. Shibley indicated to Binda that he was interested in selling the property, and after some negotiations with a prospective buyer, he sold the property in August, 1965, [1] for $66,592, and the furnishings within for $5,040. One provision of the sales agreement required that Shibley have the building 599 fully rented at the time of the sale. Shibley took no active part himself in seeking out a purchaser for the property. He placed no signs on the building indicating *200 that it was for sale, nor did he otherwise personally advertise for the sale of the property. Sometime in January or February, 1966, Shibley was approached by another real estate agent named Kenneth Foot ("Foot") concerning the sale of the Town Crier Apartments. Shibley indicated that he would be willing to sell "if the price was right." He also gave Foot permission to advertise the property as well as to show it to prospective buyers. However, Shibley did not permit any "For Sale" signs to be placed on the property because he felt such signs detracted from the appearance of the apartment building. He took no active part himself in seeking out a purchaser for the property. He did not seek out Foot originally, nor did he ever consult any other real estate broker concerning the sale of this property. Moreover, he never personally advertised in any manner that the property was for sale. Around *201 April Shibley received a formal offer on the property which was acceptable to him. However, before entering into a contract for the sale he communicated with his accountant and inquired about the tax consequences of selling the property. The accountant advised Shibley that if he held the property for more than six months any gain realized would qualify for capital gain treatment. In April Shibley entered into a sales agreement for the apartment building and the purchaser gave a deposit on the property to Foot, but the sale did not become effective immediately. Then on May 9, 1966, more than six months after the apartment building had been completed, Shibley concluded the sale of the Town Crier Apartments for $209,000 and the furnishings within for $30,000. [2]
Shibley's reason for selling both the Stockdale Apartments and the Town Crier Apartments stemmed from his dissatisfaction with the problems of apartment *202 house management, and he has not thereafter built or operated any more apartment buildings. At the time Shibley owned the lots at 619 and 873 Springfield Street and the apartment buildings thereon, the Stockdale and Town Crier apartments, respectively, he owned his own home and had two other investment interests which involved real estate held for rental purposes, as follows: (1) Since 1957 (and at least until the time of the trial herein), Shibley and his brother owned all the stock in the Shibley Realty Corporation, which owned a commercial building containing three separate stores from which it earned rental income. (2) Sometime in 1965 or 1966 Shibley purchased a lot on Main and Reed Streets in Agawam on which he subsequently built a "professional" office building in association with another person; Shibley purchased the land and built the office building as an investment, and he and his associate still owned the property at the time of the trial herein. Aside from these investments made either before or during the period when he owned the apartment houses, Shibley engaged in several real estate transactions after he sold both the Stockdale and Town Crier Apartments. Sometime *203 in late 1966 or 1967 he purchased a vacant lot in Westfield, Massachusetts. The lot was zoned for a business use and at one time Shibley considered constructing a motel on the land but never did so. He continued to own the property at least until the time of the trial herein. In addition, sometime in 1966 or 1967 Shibley purchased a "house lot" on James Street, also in Westfield, with the intention of some day building a house thereon for his own use. However, after he retired from the used car sales business in October, 1967, he decided instead to use the lot in the construction of a house which he would hold for sale. Beginning with this one house in late 1967 or early 1968, Shibley then went into the business of building and selling houses. In 1968, he purchased three more lots in Westfield and built a house on each which he held for sale. Also in 1968, Shibley, acting as a general contractor, built one house in another community. In all, he built and sold, or merely constructed as a contractor, five or six houses from late 1967 until the end of 1969. During this period Shibley regarded himself as a "builder" of homes. Similarly, he regarded the income he derived therefrom as *204 ordinary income, and reported it as such on his income tax returns. 600 On their 1965 tax return petitioners reported $8,152 as a long term capital gain arising out of the sale of the Stockdale Apartments, and no gain or loss in connection with the sale of the appurtenant furnishings. Petitioner reported long term capital gains on their 1966 return of $50,702 from the sale of the Town Crier Apartments and $10,146 from the sale of the appurtenant furnishings. Shibley has executed a partial agreement with the Commissioner in which he agreed that the basis of the Stockdale Apartments was overstated on the 1965 return and that the basis of the Town Crier Apartments was overstated on the 1966 return. Pursuant to the partial agreement he has paid taxes for 1965 and 1966 in the respective amounts of $2,413.04 and $14,937.62. He has also paid additions to tax under section 6653(a), I.R.C. 1954, for 1965 and 1966 in the respective amounts of $120.65 and $746.88. [3]
*205 In his deficiency notice the Commissioner determined that the gain realized by Shibley from the sale of the Stockdale Apartments in 1965 and the Town Crier Apartments in 1966 along with the furnishings within were taxable as ordinary income rather than capital gain. The Commissioner further determined that additions to tax should be assessed under section 6653(a), I.R.C. 1954, for underpayments of tax in 1965 and 1966 "due to negligence or intentional disregard of rules and regulations". Opinion RAUM, Judge: Petitioners reported gains realized by Peter R. Shibley from the sale of two apartment houses - one in 1965 and another in 1966 - as capital gains on their 1965 and 1966 income tax returns. The Commissioner determined that the gains in question constituted ordinary income. The issue turns on whether the apartment buildings, together with the lots and furnishings, were "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" (as argued by the Commissioner) within the meaning of section 1221, I.R.C. 1954. The question is resolved by determining the relationship of the property sold to Shibley's trade or business. If, on *206 the one hand, it was in the ordinary course of Shibley's trade or business to build and sell apartment houses and these particular apartment houses were held by him for that purpose, then these gains represent ordinary income. If, on the other hand, the two apartment houses were either "capital assets" (section 1221) or "property used in the [taxpayer's] trade or business" (section 1231) then the treatment of gain is governed by sections 1201 and 1202, I.R.C. 1954. The question whether property is held primarily for sale to customers in the ordinary course of a taxpayer's trade or business is entirely factual, and each case must be examined with reference to its own circumstances. Randolph D. Rouse, 39 T.C. 70, 76; S. O. Bynum, 46 T.C. 295, 299; Royce W. Brown, 54 T.C. 1475, 1487, on appeal (C.A. 10). A number of factors have been taken into account in the resolution of this factual issue. See, e.g., Robert W. Pointer, 48 T.C. 906, 915-916, affirmed 419 F. 2d 213 (C.A. 9); Maddux Construction Co., 54 T.C. 1278, 1284. However, no single factor is determinative. Ralph J. Oace, 39 T.C. 743, 747; *207 Royce W. Brown, supra; Maddux Construction Co., supra.Furthermore, whether property is held primarily for sale to customers in the ordinary course of a taxpayer's trade or business depends on whether it was "principally" held for that purpose. Malat v. Riddell, 383 U.S. 569, 572. It would serve no useful purpose to engage in a detailed explication of the factors considered in the many cases in this area. It is sufficient to state that we have carefully considered all the evidence and that it is our conclusion that the apartment properties were not held by Shibley for sale to customers in the ordinary course of his trade or business. Shibley originally purchased the lot at 619 Springfield Street for use in his used car sales business. Subsequent to the purchase of the lot, however, he decided that contruction of an apartment building (the Stockdale Apartments) on the vacant land would be a good investment. He purchased the second lot at 873 Springfield Street for the same purpose he had originally purchased the first lot - for use in his business of selling used automobiles. Because 601 struction and management of the Stockdale Apartments *208 consumed so much of his time he decided instead to build an even larger apartment building (the Town Crier Apartments) on the second lot and thereby to enter into what he termed the "apartment business" - the ownership and management of apartments. Eventually, he discovered that he was unable to cope with the problems of either the investment in or the business of apartment house ownership. Though he did not solicit for the sale of either the Stockdale or Town Crier Apartments, he was willing to sell each apartment house when approached by a real estate agent because of the difficulties he had experienced. He never again built, owned or sold any other apartment buildings. We are satisfied that he did not hold these properties for sale in his trade or business. Shibley originally held the lots in question for use in his used car sales business. Later he held the apartment houses, which he had constructed on the lots, for investment purposes. And still later he entered into the "apartment business" and held the property for use in the business of owning and managing such "income-producing" property. It is unncessary to decide whether Shibley's ownership and management of the apartment *209 buildings constituted a "trade or business" for all the purposes of section 1231. See M. A. Paul, 18 T.C. 601, 603, vacated on another point, 206 F. 2d 763 (C.A. 3); Rosalie W. Post, 26 T.C. 1055, 1056-1057, 1060-1061. Nor is it necessary to decide at which particular moments in time his investment and business-use purposes began and ended. On these facts it is sufficient to state that at no time did Shibley hold the properties principally, or at all, "for sale to customers in the ordinary course of his trade or business" within the meaning of sections 1221 and 1231. Cf. Camp Wolters Enterprises, Inc., 22 T.C. 737, 754, affirmed 230 F. 2d 555 (C.A. 5), certiorari denied, 352 U.S. 826. Moreover, Shibley's other real estate related interests at the time he owned the Stockdale and Town Crier Apartments were also rental properties. It was only after he sold the two apartment houses in 1965 and 1966 and left the used car sales business in October 1967, that he engaged in the business of building and selling houses. The apartment houses were not part of his subsequent business of selling real estate, the gains *210 from which he did report as ordinary income. See Heller Trust v. Commissioner, 382 F. 2d 675, 679-680 (C.A. 9), reversing 24 T.C.M. 1663, and 25 T.C.M. 634; cf. Randolph D. Rouse, supra, 39 T.C. 70, 76. Because we have decided that the apartment houses in question were not property held for sale in the ordinary course of Shibley's trade or business, it is unnecessary to reach the question of the section 6653(a) additions to tax determined by the Commissioner. Decision will be entered under Rule 50. Footnotes
1. Shibley was not required to pay the penalty under his mortgage loan for selling the property within four years (see p. , supra) because the apartment building was refinanced by the same bank. He did pay approximately $2,500 to Binda as a commission for selling the Stockdale Apartments.↩
2. The record does not disclose whether Shibley was required to, and in fact did pay any penalty under his mortgage loan (see pp. - and , supra) for selling the property within four years. He did pay $10,000 to Foot as a commission for selling the Town Crier Apartments.↩
3. Subsequent to these payments made under the partial agreement Shibley has also paid tax and an addition to tax for 1965 in the respective amounts of $126.70 and $6.34, and for 1966 in the respective amounts of $321.71 and $16.09.↩