ROSALIE W. POST, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54184. Filed September 17, 1956.

---

*Joseph C. White, Esq.*, and *Paul Little, Esq.*, for the petitioner.
*James E. Markham, Jr., Esq.*, for the respondent.

### OPINION.

RICE, *Judge:* This proceeding involves the following deficiencies in income tax:

| Year | Deficiency |
| --- | --- |
| 1945 | $542.19 |
| 1946 | 983.52 |
| 1947 | 501.74 |

The issues to be decided are: (1) The proper basis for computing the amount of loss sustained on the sale of property acquired from an inter vivos trust; and (2) whether the loss sustained was a capital or an ordinary loss.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Petitioner is a resident of Huntington, New York, and filed her returns for the years 1945 and 1946 with the former collector of internal revenue for the first district of New York. She filed her return for the year 1947 with the former collector of internal revenue for the third district of New York.

On November 28, 1928, Henry K. S. Williams transferred certain real property known as 18 Beaver Street, in the city of New York, in trust for the benefit of the children of his nephew, Thomas Resolved Williams, of whom petitioner was one. The grantor retained a life income from the trust corpus. The trust indenture also provided:

The Grantor hereby reserves the right during his life to alter any and all of the terms and provisions of this trust deed, including the making of changes in the beneficiaries and the amounts they are to receive, but the Grantor shall have no power to revoke this trust deed in whole or in part or to revest in himself or to vest in his estate any part of the principal of the trust estate. Any such alteration shall be by indenture executed and delivered by the Grantor and the trustee.

The grantor died on May 16, 1944, without having changed the beneficiaries of the trust. Petitioner, at that time, received an undivided one-fifth interest in the Beaver Street property. From that time until February 1, 1945, she and the other co-owners rented the property for the purpose of producing income. The property was managed by an

agent which maintained it, collected the rents, paid necessary taxes, insurance, the cost of repairs, and other expenses.

On February 1, 1945, petitioner joined with the other owners in a sale of the property for $35,000, less expenses of sale in the amount of $191.95. Petitioner's share of the proceeds was $6,961.61.

The adjusted basis of the Beaver Street property on November 28, 1928, in the hands of the grantor, was $87,024.39. The fair market value of the property at that time was $155,000, of which amount $25,000 was allocable to the building and $130,000 to the land. The Beaver Street property was properly included in the gross estate of the grantor for Federal estate tax purposes at a value of $35,000.

On her income tax return for 1945, the petitioner claimed a long-term capital loss on the sale of the property using as a basis therefor the basis of the property in the hands of the grantor, $87,024.39. One thousand dollars of such capital loss was deducted in that year and $1,000 of such loss was carried .forward to each of the years 1946 and 1947.

On July 21, 1950, petitioner filed a timely claim for refund of income tax paid for 1945 on the ground that the loss sustained in that year on the sale of the Beaver Street property should have been reported as an ordinary loss rather than as a long-term capital loss.

The respondent determined that the proper basis for computing the amount of loss sustained on the sale of the Beaver Street property was the fair market value of such property on the date of the grantor's death, $35,000, and that the loss sustained was a capital loss.

Petitioner herein resists the respondent's determination and renews her claim that the loss sustained on the sale of the Beaver Street property was an ordinary rather than a long-term capital loss.

Petitioner argues that section 113 (a) (2) [1] of the 1939 Code is controlling here for the purpose of determining the basis of the Beaver Street property. She argues that the gift was made in 1928 and that the proper basis for determining a loss on the sale of the property is the grantor's basis since such basis was lower than the fair market value of the property on the date of the gift.

In support of his determination that the Beaver Street property had a basis of $35,000, for purposes of computing a loss on its sale in 1945, the respondent argues that the basis for computing such loss

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(2) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that if such basis (adjusted for the period prior to the date of the gift as provided in subsection (b)) is greater than the fair market value of the property at the time of the gift, then for the purpose of determining loss the basis shall be such fair market value. &ast; &ast; &ast;

should be determined under the provisions of section 113 (a) (5),[2] and, in the alternative, if not so determined under that section, then under section 113 (a) (2); but, he argues that the date of the gift under that subsection was not the date on which the trust was created but the date of the grantor's death. Hence, he claims that the proper basis for computing the loss under either that subsection or subsection (a) (5) is $35,000, the fair market value of the property at the time of the grantor's death.

We think it clear from even a cursory reading of the trust indenture that subsection (a) (5) is not the applicable statute under which the basis of the Beaver Street property is to be determined. That subsection provides that if property was acquired by a transfer in trust under which the income therefrom is paid for life to the grantor who reserves the right to revoke the trust, the basis of such property in the hands of the beneficiaries shall be the same as if the trust instrument had been a will executed on the day of the grantor's death, which means that the basis of the property would be the fair market value on the date of the grantor's death. Such treatment of property acquired through an inter vivos trust, in which the grantor reserved the power of revocation, was first provided in the Revenue Act of 1928, 45 Stat. 791. The Conference Report [3] which accompanied the Act stated that:

In view of the *complete* right of revocation * * * on the part of the grantor at all times between the date of creation of the trust and his death, it is proper to view the property for all practical purposes as belonging to the grantor rather than the beneficiaries and to treat the property as vesting in the beneficiaries according to the terms of the trust instrument, not at the date of creation of the trust, but rather on the date of the grantor's death, for the purpose of determining gain or loss on sale or other disposition of the property * * * by a beneficiary. * * * [Emphasis added.]

Here the grantor reserved the right to alter any and all of the terms and provisions of the trust *except* that those powers could not be used to revoke the trust or to revest in him or his estate, in whole or in part, any part of the principal of the trust estate. Clearly, his powers to

---

[2] SEC. 113. ADJUSTED 'BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

* * * * * * *

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death. * * *

[3] H. Rept. No. 1882, 70th Cong., 1st Sess. (1928).

alter and amend were not the "complete right of revocation" which the statute contemplates.

The respondent's argument here seems similar to the argument he advanced in *Minnie M. Fay Trust "A"*, 42 B. T. A. 765 (1940), and that advanced by the taxpayer in *Commonwealth Trust Co. of Pittsburgh* v. *United States*, 96 F. Supp. 712 (W. D., Pa., 1951). In those cases the courts held that anything less than a clear power of complete revocation would not bring an inter vivos trust within the purview of section 113 (a) (5). We so hold here. Cf. *Edith Hilles Dewees*, 1 T. C. 791 (1943). See 3 Mertens, Law of Federal Income Taxation, sec. 21.78.

If Congress had meant to include such powers to amend and alter the terms of the trust as the grantor retained here, as well as the power of complete revocation, within the meaning of section 113 (a) (5), it surely could have done so, as in fact it did do in the Technical Changes Act of 1953, 67 Stat. 615.

Respondent argued in the alternative that even if the basis of the property were not to be determined under section 113 (a) (5), its basis determined under section 113 (a) (2) would still be $35,000 because the gift took place in 1944 when the grantor died and not in 1928 when the trust was created. The basis of the Beaver Street property must, of course, be determined pursuant to section 113 (a) (2). However, we cannot accept the respondent's position that the gift was made in 1944 rather than in 1928. We think the petitioner is clearly correct in arguing that the gift took place in 1928 when the grantor irrevocably parted with the corpus of the trust by placing it in the hands of the trustee. Although the petitioner's interest in the Beaver Street property at that time was obviously contingent upon the grantor's not naming someone else as a beneficiary in her place, her interest, nevertheless, began at that time. *J. Kiefer Newman, Jr.*, 4 T. C. 226 (1944); *Scranton Lackawanna Trust Co., Trustee*, 29 B. T. A. 698 (1934), affd. 80 F. 2d 519 (C. A. 3, 1935), certiorari denied 297 U. S. 723 (1935). See *Helvering* v. *Reynolds*, 313 U. S. 428 (1941). The respondent's own regulations are to the same effect and plainly contrary to the position he takes here. Regulations 111, section 29.113 (a) (2)-1, provide:

Section 113 (a) (2) applies to all gifts of whatever description, whenever and however made, perfected, or taking effect; whether in contemplation of or intended to take effect in possession or enjoyment at or after the donor's death; or whether made by means of the exercise (other than by will) of a power of appointment or revocation, or any other power. Section 113 (a) (2) applies whether the gift was made by a transfer in trust or otherwise.

\* \* \* \* \* \* \*

All titles to property acquired by gift relate back to the time of the gift, even though the interest of him who takes the title was, at the time of the gift, legal, equitable, vested, contingent, conditional, or otherwise. Accordingly, all property acquired by gift is acquired at the time of the gift. In the hands of every person acquiring property by gift, the basis is always the same, whether such person receives the property immediately upon the transfer by the donor, or as remainderman under the instrument of gift, or whether such person is any other person to whom such uniform basis is applicable. Such uniform basis applies to the property in the hands of the trustee or the beneficiary under a gift instrument, both during the term of the trust and after the distribution of the trust corpus. Adjustments to basis, as required by section 113 (b), are to be made as respects the period prior to the gift, and the period after the gift. With respect to the latter period, the adjustments to the uniform basis are to be made in accordance with subsection (e) of section 29.113 (a) (5)–1.

The time of the gift is the time when the gift is consummated. Delivery, actual or constructive, is requisite to a gift. In determining the time of the gift, the passing of title by the donor is not decisive; the time when the donor relinquishes substantial dominion over the property is decisive.

Respondent cites only *Estate of Sanford* v. *Commissioner*, 308 U. S. 39 (1939), in support of his argument that the gift to petitioner took place at the time of the grantor's death in 1944. That case is obviously distinguishable from the facts here. It concerned the date of a gift, as that question is involved in the estate and gift taxes and not the income tax. As the Court noted in that case, the gift and estate tax provisions of the Code are in *pari materia* and must be construed together. That is not true of those provisions of the Code and the income tax provisions. *J. Kiefer Newman, Jr., supra.*

We therefore conclude that the proper basis for computing the loss sustained on the sale of the Beaver Street property was the basis of such property in the hands of the grantor, $87,024.39, since such value was less than the fair market value of the property at the time of the gift on November 28, 1928.

We do not understand why, at this late date, the respondent should dispute the petitioner's claim that the Beaver Street property was real property used in her trade or business of deriving rental income. *Gilford* v. *Commissioner*, 201 F. 2d 735 (C. A. 2, 1953), affirming a Memorandum Opinion of this Court dated February 27, 1952; *Adolph Schwarcz*, 24 T. C. 733 (1955) ; *Anders I. Lagreide*, 23 T. C. 508 (1954) ; *Leland Hazard*, 7 T. C. 372 (1946). Since he has determined that the loss here in question was from the sale of a capital asset, he must see some distinction in the above-cited and many similar cases which we do not see.

We think it clear that the petitioner was engaged in the business of renting the Beaver Street property along with the other co-owners thereof. The property was, therefore, realty used in her trade or

business. As such, the loss on its sale is governed by section 117 (j)[4] which provides that if there are net losses from the sale of such property, they shall not be treated as losses from the sale or exchange of capital assets, but as ordinary losses.

*Decision will be entered under Rule 50.*

---

[4] SEC. 117. CAPITAL GAINS AND LOSSES.
(J) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—
(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *
(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph:
(A) In determining under this paragraph whether gains exceed losses, the gains and losses described therein shall be included only if and to the extent taken into account in computing net income, except that subsections (b) and (d) shall not apply.