ESTATE OF LEE D. JALKUT, DECEASED, NATHAN M. GROSSMAN, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1770-89.        Filed April 29, 1991.

*John A. Simonetti,* for the petitioner.
*Vijay S. Rajan,* for the respondent.

OPINION

NIMS, *Chief Judge:* Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $55,184.

The issue for decision is whether gift transfers made from the decedent's revocable trust within 3 years of his death are included in his gross estate pursuant to sections 2035(d)(2) and 2038(a)(1). (Unless otherwise indicated, section references are to sections of the Internal Revenue Code in effect as of the date of the decedent's death. Rule references are to the Tax Court Rules of Practice and Procedure.)

*Background*

This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

On September 28, 1971, Lee D. Jalkut (decedent) created the Lee D. Jalkut Revocable Trust (revocable trust). The

revocable trust was funded by an inter vivos transfer to the trust of decedent's entire estate, including his personal residence, bank and brokerage accounts, and publicly traded stocks.

The decedent appointed himself trustee of the revocable trust and maintained the power to "amend or revoke [the trust] in whole at any time or in part from time to time in any respect."

On June 27, 1983, the decedent executed an Eleventh Amendment to the trust agreement amending the revocable trust in its entirety. Article III of the trust agreement, relating to payments during the life of the decedent, provided in pertinent part:

> During the lifetime of the Grantor, the Trustees shall pay to the Grantor from the trust estate, the income and such sums from the principal as he may request.
>
> If at any time or times the Grantor is unable to manage his affairs, the Trustees may use such sums from the income and principal of the trust estate as the Trustees deem necessary or advisable for the care, support and comfort of the Grantor or his descendants or for any other purpose the Trustees consider to be in the best interests of the Grantor, adding to principal any income not so used. The Trustees are also authorized to make such payments for the benefit of the descendants of the Grantor and such other person or persons as the Grantor had theretofore been accustomed to make (except that no payment in any calendar year to any such descendants or other person shall exceed the maximum amount allowable as an exclusion under Internal Revenue Code Section 2503(b) as amended from time to time), and in addition, may continue to make such payments for philanthropic purposes or otherwise as the Grantor had been accustomed to make prior to such illness or disability; provided, however, that the primary consideration of the Trustees shall at all times be the support and welfare of the Grantor.

The trust agreement contained no further dispositive provisions applicable during the decedent's lifetime.

In 1984, the decedent was diagnosed as having inoperable cancer.

On October 23, 1984, the decedent executed a Thirteenth Amendment to the trust agreement. Article V of the amendment, entitled "Disposition of Trust Estate Upon Death of the Grantor," provided for the payment of specific gifts and the distribution of personal property from the revocable trust to named individuals and organizations. The

remaining assets of the revocable trust were to be held in trust for the benefit of decedent's children.

Article VIII of the Thirteenth Amendment of the trust agreement provided that if the decedent should be unwilling or unable to act as trustee for any reason, then Rosehelen Klein-Fields and Nathan M. Grossman would act as cotrustees of the revocable trust.

On November 14, 1984, the decedent established the Lee Jalkut Family Trust (family trust), an irrevocable trust designed to benefit four of his grandchildren. The family trust was funded by transferring 4,810 shares of a mutual fund with a value of $40,355.90 from the revocable trust.

On December 12, 1984, the decedent established an irrevocable trust for the benefit of Anna S. Jalkut and Jane Jalkut (Jalkut trust). The Jalkut trust was funded by transferring $20,000 from the revocable trust.

On January 25, 1985, the decedent's personal physician wrote to Rosehelen Klein-Fields and Nathan M. Grossman and advised that due to the decedent's failing physical and mental condition, the decedent would no longer be able to act as trustee of the revocable trust. At that time, Rosehelen Klein-Fields and Nathan M. Grossman assumed the duties of cotrustees of the revocable trust.

On January 25, 1985, the cotrustees made the following transfers from the revocable trust:

| Donee | Amount |
|---|---|
| Family trust | $40,000 |
| Jalkut trust | 20,000 |
| Michael Jalkut | 10,000 |
| Theresa Jalkut | 10,000 |

The parties apparently agree that the family trust and the Jalkut trust were funded with present interest gifts within the annual exclusion limit in both 1984 and 1985. See sec. 2503(b) and (c). Consequently, we need not inquire further as to the status of these gifts.

The decedent died testate on February 6, 1985.

On November 4, 1985, Nathan M. Grossman filed a Federal estate tax return on behalf of the decedent's estate. The estate tax return reported a total gross estate of $1,152,139. Schedule G of the estate tax return reported no

transfers included in the gross estate under sections 2035 or 2038.

Respondent determined a deficiency in petitioner's estate tax of $55,184 based on a finding that the 1984 and 1985 transfers totaling $140,356 from the revocable trust to the family trust, to the Jalkut trust, and to Michael and Theresa Jalkut should have been included in the decedent's gross estate pursuant to sections 2035 and 2038.

The petition in this case was filed by Nathan M. Grossman in his capacity as the executor of the Estate of Lee D. Jalkut. At the time of the filing of the petition herein, Nathan M. Grossman resided in Deerfield, Illinois.

## Discussion

The Federal estate tax imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. Sec. 2001; *U.S. Trust Co. v. Helvering,* 307 U.S. 57, 60 (1939). The taxable estate is defined in section 2051 as the gross estate less deductions. Pursuant to sections 2031 and 2033, the value of the gross estate includes the value of all property to the extent of the interest therein of the decedent at the time of his death. Further, under a network of statutory rules, the gross estate includes transfers effected during the lifetime of the decedent. See generally secs. 2035 through 2038 and 2042 (transfer provisions). The transfer provisions pertinent to the case at hand are section 2035, relating to gifts made within 3 years of the death of the decedent, and section 2038, relating to revocable transfers.

Section 2035(a) generally provides for the inclusion in the gross estate of any gifts made by the decedent within 3 years of the decedent's death. Section 2035(b)(2), however, excepts from the general rule gifts for which the decedent was not required to file a gift tax return pursuant to section 6019. See sec. 2503(b) defining annual exclusion gifts. For transfers made after December 31, 1981, and thus applicable to the transfers here under consideration, section 2503(b) permits a donor to exclude the first $10,000 in annual gifts to each donee.

The application of section 2035(a) is further limited by section 2035(d) which was added to the law by section 424

of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 317, and section 104(d)(2) of the Technical Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2383. Section 2035(d) provides in pertinent part:

SEC. 2035(d). DECEDENTS DYING AFTER 1981.—

(1) IN GENERAL.—Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.

(2) EXCEPTIONS FOR CERTAIN TRANSFERS.—Paragraph (1) of this subsection and paragraph (2) of subsection (b) shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent.

In sum, section 2035(d)(1) provides that the general rule of section 2035(a) shall not apply to the estates of decedents dying after December 31, 1981. Thus, gifts generally are not included in the gross estates of such decedents. However, section 2035(d)(2) mandates that subsection (d)(1) will be disregarded and that the gross estate will take into account the value of transferred property interests (including annual exclusion gifts which would otherwise be excluded from the gross estate under subsection (b)(2)), which are included in the value of the gross estate under the transfer provisions enumerated in section 2035(d)(2).

Because the decedent died in 1985, section 2035(d) applies to his estate.

Section 2038, one of the enumerated transfer provisions referred to in section 2035(d)(2), provides in pertinent part as follows:

SEC. 2038(a). IN GENERAL.—The value of the gross estate shall include the value of all property—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3-year period ending on the date of the decedent's death.

Thus, the value of the gross estate includes the value of any interest transferred by the decedent, the enjoyment of which is subject to change by virtue of the decedent's retention of the power to alter, amend, revoke, or terminate, or where such power is relinquished during the 3-year period ending with the decedent's death.

Before relating the arguments of the parties, a brief discussion of the development of the transfer provisions is necessary.

Historically, the primary purpose of the transfer provisions was to prevent the evasion of Federal estate taxes by taxing inter vivos transfers intended as substitutes for testamentary dispositions. *United States v. Wells,* 283 U.S. 102, 115-117 (1931). In this regard, the law prior to 1976 provided for a rebuttable presumption that all transfers made within 3 years of death were made in contemplation of death for the purpose of avoiding Federal estate taxes. See *Estate of Sachs v. Commissioner,* 88 T.C. 769, 776 (1987), affd. in part, revd. in part 856 F.2d 1158 (8th Cir. 1988).

Because the presumption that gifts made within 3 years of death were made in contemplation of death caused considerable litigation concerning the decedent's motives in making gifts, Congress amended the transfer provisions, including sections 2035(a) and 2038, to eliminate the rebuttable presumption altogether. See secs. 2001(a)(5) and 2001(c)(1)(K) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1848, 1852. Consequently, if a transfer otherwise falls within the scope of one of the transfer provisions, the decedent's motive for the transfer is now immaterial.

Respondent argues that when the decedent transferred his assets to the revocable trust, the ultimate enjoyment of the transferred assets was subject to change pursuant to section 2038(a)(1) because the decedent possessed the power to amend or revoke the trust. Respondent further contends that the transfers in question from the revocable trust, effected within 3 years of the decedent's death, served as a relinquishment of the decedent's powers over the transferred property as contemplated in the final clause of section 2038(a)(1). In accordance with section 2035(d)(2), respondent concludes that the total amount of the transfers

effected in 1984 and 1985 are included in the value of the gross estate.

Petitioner contends that the value of the decedent's revocable trust on the date of death (minus the annual exclusion gifts) is included in the gross estate under section 2033. As petitioner sees it, sections 2035(d)(2) and 2038(a)(1) are not applicable under the circumstances because the decedent did not divest himself of beneficial ownership of the assets transferred to the revocable trust.

In conjunction with the foregoing, petitioner argues that the transfers in question were annual exclusion gifts and that section 2035(d)(1) excludes all such gifts transferred by a decedent dying subsequent to December 31, 1981, from the gross estate.

In the alternative, petitioner insists that the Court must look past the technical form of the transactions and treat the direct transfers from the revocable trust as if the decedent had made withdrawals from the trust prior to the transfer of the gifts. Petitioner contends that respondent's position must be rejected because it elevates form over substance and imposes a "superficial formality" on estate planning in that a formal withdrawal of assets from a revocable trust must be accomplished in order to avoid having annual exclusion gifts included in the gross estate.

Finally, petitioner asserts that it would be unjust to include in the gross estate the value of gift transfers from a revocable trust effected within 3 years of the date of the decedent's death when the value of deathbed annual exclusion gifts made by a decedent dying subsequent to December 31, 1981, is not included in the gross estate under section 2035(d)(1).

We begin with petitioner's contention that the value of the decedent's revocable trust on the date of death is included in the gross estate pursuant to section 2033, as opposed to section 2038. In support of this contention, petitioner cites income and gift tax provisions, maintaining that the decedent never divested himself of beneficial ownership of the assets transferred to the revocable trust. Petitioner misconstrues the provisions in question.

While it is well established for purposes of income tax that the grantor of a revocable trust generally is treated as

the owner of the income of the trust under the grantor trust provisions, see section 676, that particular treatment is not controlling or dispositive with respect to the proper application of the estate tax provisions. See *Post v. Commissioner,* 26 T.C. 1055, 1060 (1956). On the other hand, estate and gift taxes are in pari materia and must be construed together. *Estate of Sanford v. Commissioner,* 308 U.S. 39, 44 (1939). With these precepts in mind, we turn again to sections 2033 and 2038.

Section 2033 provides in broad terms that the value of the gross estate includes the value of all property to the extent of the interest therein of the decedent at the time of his death. In *Estate of Watson v. Commissioner,* 94 T.C. 262, 275 (1990), we concluded that the value of certain farmland was included in the gross estate under section 2033. Specifically, the taxpayer had transferred the farmland in question to a trust, but the trust had terminated before the taxpayer's death. Because the taxpayer never provided for the disposition of the farmland after the termination of the trust, we looked to Mississippi law for guidance and, based thereon, concluded that the taxpayer was the beneficial owner of the entire interest in the farmland at the time of his death.

In contrast, section 2038 specifically pertains to *transfers* during the life of the decedent and provides that the gross estate includes the value of any interest transferred by the decedent, in trust or otherwise, where enjoyment of the transferred property is limited or subject to change because of the decedent's retention of the power to alter, amend, revoke, or terminate the transfer. There is no need for the decedent to actually exercise such a power for section 2038 to apply. *Estate of Graves v. Commissioner,* 92 T.C. 1294, 1300 (1989).

Section 2038(a) has been routinely applied to include in the gross estate the value of assets transferred to a revocable trust. See *Estate of Carli v. Commissioner,* 84 T.C. 649, 652 (1985); *Estate of Hill v. Commissioner,* 64 T.C. 867, 877 (1975); *Estate of Davis v. Commissioner,* 51 T.C. 361, 368 (1968); see also *Allen v. Trust Co.,* 326 U.S. 630, 634 n.3 (1946) (citing section 302(d)(1) of the Revenue Act of 1926, a predecessor to section 2038, for the proposition that

the corpus of a trust may be included in the gross estate to the extent the decedent released a power to amend the trust in contemplation of death). Section 2038 has also been applied to irrevocable trusts. See *Estate of O'Connor v. Commissioner,* 54 T.C. 969, 973 (1970), and cases cited therein.

Applying generally accepted rules of statutory construction, we decline to apply the general terms of section 2033 to circumstances specifically referred to under section 2038. See 3A Sutherland Statutory Construction, sec. 66.03, p. 303 (4th ed. 1986); see also *Estate of Tully v. United States,* 208 Ct. Cl. 596 (1976); Rev. Rul. 75-553, 1975-2 C.B. 477. A plain reading of the provisions reveals that the date of death value of a revocable trust generally is included in the gross estate pursuant to section 2038.

We now address the question of whether the gift transfers from decedent's revocable trust, effected within 3 years of his death, are included in the gross estate pursuant to sections 2035(d)(2) and 2038(a)(1). The parties do not cite any cases directly on point with respect to this issue.

Petitioner first contends that annual exclusion gifts are not included in the gross estate by virtue of section 2035(d)(1). We disagree.

As previously noted, section 2035(d)(1) provides that the general rule of section 2035(a) shall not apply to the estates of decedents dying after December 31, 1981. Consequently, gifts made within 3 years of the death of a decedent dying after December 31, 1981, generally are not included in the value of the gross estate. However, subsection (d)(2) provides exceptions to the rule stated in subsection (d)(1). In particular, subsection (d)(2) mandates that subsection (d)(1) will be disregarded and that the gross estate will include the value of transferred property interests (including annual exclusion gifts which would otherwise be excluded from the gross estate under section 2035(b)(2)) if such property interests are included in the value of the gross estate under section 2038.

Any lingering doubt as to application of section 2035(d)(2) is laid to rest by the section's legislative history. Specifically, the reference to subsection (b)(2) within section 2035(d)(2) was added by section 104(d) of the Technical

Corrections Act of 1982, Pub. L. 97-448, 96 Stat. 2383. The Senate Report addressing the technical corrections states:

The bill applies the 3-year inclusion rule to interests which would have been includible in the decedent's estate under section 2036, 2037, or 2038, whether or not a gift tax return was required with respect to the transfer. [S. Rept. 97-592 (1982), 1983-1 C.B. 475, 484.]

Thus, petitioner's reliance on section 2035(d)(1) as a blanket rule for the exclusion of all gifts from the gross estate is misplaced.

In the alternative, petitioner argues that section 2038(a)(1) was not intended to reach transfers of annual exclusion gifts. We note that petitioner cites IRS private letter rulings in his petition with regard to this issue. These rulings have no precedential force. See sec. 6110(j)(3); *Rowan Cos. v. United States,* 452 U.S. 247, 261 n.17 (1981). Nonetheless, the number of rulings reveals that the issue is one of significant importance to estate planners. See Nelson, "Inter Vivos Gifts From Revocable Trusts," 15 Tax Mgmt. Est., Gifts and Tr. J. 168 (1990).

In any event, we find no support for petitioner's broad contention that section 2038(a)(1) does not apply to transfers of annual exclusion gifts. To the contrary, section 2035(d)(2) unambiguously provides that such gifts may be included in the gross estate under several transfer provisions, including section 2038. In addition, neither section 2038 nor the regulations which limit its scope suggest that annual exclusion gifts are beyond the reach of that section. See sec. 20.2038-1(a), Estate Tax Regs.

Ultimately, the determination of whether transfers effected within 3 years of death are to be included in the gross estate pursuant to section 2038 turns on the particular terms of the trust agreement.

As previously quoted, *supra* p. 676, the revocable trust provided that, absent the decedent's incapacity, the decedent was the sole permissible distributee of trust income or principal during the decedent's lifetime. However, if the decedent, at any time or times, was found to be unable to manage his affairs, the trustees were authorized to distribute income or principal to both the decedent and his descendants for their care and comfort. In addition, the trustees were authorized during the decedent's incapacity to

make gifts (within the annual exclusion amount) that the decedent had theretofore been accustomed to make.

In 1984, the decedent, acting as trustee, made gift transfers to six donees. At the time the transfers were effected, the decedent was the sole permissible distributee of the income and principal of the revocable trust. Under these circumstances, we agree with petitioner that the gift transfers could only have been effected pursuant to the decedent's power to withdraw income and principal from the trust. Accordingly, we conclude that the decedent exercised his power to withdraw assets from the trust and subsequently made gift transfers in his individual capacity directly to the respective donees.

By characterizing the transactions effected in 1984 as withdrawals preceding direct gift transfers from the decedent, it necessarily follows that the transfers do not constitute a relinquishment of the decedent's power to alter, amend, revoke, or terminate the trust with respect to the transferred assets as contemplated under section 2038. Because the withdrawn assets were not subject to inclusion in the gross estate pursuant to section 2038, section 2035(d)(2) does not control and the gifts are excluded from the gross estate under section 2035(d)(1).

In contrast to the 1984 transfers, the 1985 transfers were effected under a distinctly different set of circumstances. In particular, the decedent was pronounced unfit to manage his affairs and the gift transfers were effected by substitute trustees. By virtue of the decedent's incapacity, the trustees were authorized to distribute both income and principal from the revocable trust directly to both the decedent and his descendants. In this regard, the transfers by the trustees to persons other than the decedent cannot properly be characterized as withdrawals by the decedent. Rather, such transactions must be considered a relinquishment by the decedent, through the trustees, of his power to alter, amend, revoke, or terminate the trust with respect to the transferred assets as contemplated in section 2038(a). Thus, because the amounts in question would have been included in the decedent's gross estate under section 2038 if retained by the decedent, the gifts effected by the trustees are

included in the decedent's gross estate under section 2035(d)(2).

As a final matter, we reject petitioner's argument that we should disregard the form of the transactions effected in 1985 in favor of their substance. The tax implications associated with the utilization of limited or incomplete inter vivos transfers in estate planning are distinctly articulated in the controlling statutory provisions. To the extent that the decedent elected to enjoy the advantages relating to the utilization of a revocable trust, his estate must endure the tax disadvantages arising from that election as well. In this regard, the means for ensuring that annual exclusion gifts will not be included in the gross estate cannot be viewed as a mere "superficial formality."

To reflect the foregoing,

*Decision will be entered under Rule 155.*