ESTATE OF ERMA M. KISLING, DECEASED, WILLIAM L. KISLING, JR., AND JOHN W. KISLING AND ROSEMARY KISLING DOERR, PERSONAL REPRESENTATIVES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kisling v. Commissioner
Docket No. 19743-91
United States Tax Court
T.C. Memo 1993-262; 1993 Tax Ct. Memo LEXIS 267; 65 T.C.M. (CCH) 2956; June 15, 1993, Filed *267 Decision will be entered under Rule 155. For petitioner: John L. Sullivan. For respondent: James A. Kutten. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: This case is before us on petitioner's motion for summary judgment. The sole issue for decision is whether irrevocable fractional interests in the corpus of the decedent's revocable trust, created in favor of her three children within 3 years of her death, must be included in the gross estate under sections 2035(d)(2)[1] and 2038(a)(1). At the time the petition was filed, petitioner's personal representatives resided in St. Louis, Missouri. On February 18, 1986, Erma M. Kisling (decedent) amended and restated a revocable trust which she had created in 1981. Decedent and her three children, William L. Kisling, Jr., John W. Kisling, and Rosemary *268 Kisling Doerr, were named as trustees. The trust instrument provided in pertinent part: SECTION A
* * * ITEM ONE. This amendment and restatement has been made to provide terms for both a revocable trust as to the shares retained by the Settlor and an irrevocable trust as to the shares to be created for the benefit of Settlor's lineal descendants and spouses of lineal descendants. Settlor intends by this instrument to provide a method whereby gifts may be made through the creation of irrevocable fractional interests in the property subject to the trust. After the creation of irrevocable fractional interests, the trust would thereafter be administered by the Trustee as both a revocable trust as to the retained shares of the Settlor and as an irrevocable trust as to the shares created for the benefit of Settlor's lineal descendants and spouses. * * * ITEM FOUR. This trust as stated and the interests herein are vested, subject to the express conditions and reservations that: A. The Settlor, acting alone, may at any time during her lifetime revoke this trust as to those shares in which she has retained an interest for her life, thereby terminating the interest *269 both as to income and principal as to such shares, and receive as her own property both the principal and income assignable to such shares then in the hands of the Trustee and her sole receipt shall be a full and complete discharge to the Trustee. Such right may be exercised by an instrument in writing executed by the Settlor and delivered to the Trustee. B. The Settlor may at any time or from time to time by instrument in writing executed and delivered to and executed by the Trustee amend, alter or modify the trust in any manner as it applies to those shares in which she has retained an interest for her life. Further, Settlor may from time to time, by assignment in writing delivered to the Trustee, irrevocably assign any interest in which she has retained an interest for her life to any of the beneficiaries designated in Item One of this instrument and, when acknowledged by the Trustee, shall constitute a termination of any interest of the Settlor in any such assigned interests. It is the purpose of the Settlor in reserving this right to facilitate the transfer of interests in the trust to the designated beneficiaries from time to time. * * * SECTION B
* * * ITEM ONE *270 . During the lifetime of the Settlor the Trustee shall pay over to her, in monthly or other convenient installments, all of the net income of her share of the trust estate as the same is determinable from time to time. Furthermore, in the event of the illness or other disability of the Settlor, the Trustee may, if deemed to be in the best interests of the Settlor, use and apply the net income of her share of the trust estate for the benefit of the Settlor instead of paying the same to her directly and the Trustee may also from time to time by the use of discretion use and apply such portion or portions of the principal of her share of the trust estate for her care, support, maintenance and comfort as is deemed appropriate and proper under the circumstances. ITEM TWO. At any time during the continuation of this trust the Settlor may, by an instrument in writing, designate additional beneficiaries of this trust to receive vested fractional interests in the income and principal of the trust estate. After the receipt by the Trustee from the Settlor of a fractional interest designation to a beneficiary, the Trustee shall thereafter pay to such beneficiary, or to such beneficiary's *271 successors in interest, all of the income attributable to such fractional interest so long as the Settlor shall live. Such payments of income shall be made at least quarterly. During the lifetime of the Settlor, the Trustee shall not encroach upon the principal of the trust estate in relation to the fractional share of any such beneficiary designation. Upon the death of the Settlor, the Trustee shall distribute to a beneficiary, or such beneficiary's successors in interest, the accumulated income, if any, and principal attributable to any transferred fractional beneficial interest. Each beneficiary designation pursuant to this agreement shall be determined to be indefeasibly vested both as to income and principal and assignable in all respects by any beneficiary owning any such interest. ITEM THREE. Upon the death of the Settlor, the Trustee shall distribute the trust estate to those then entitled to any indefeasibly vested interest as provided in the preceding Item and shall pay from the Settlor's fractional interest, if any, the following items, or any of them, namely: A. Expenses of the last illness and funeral of the Settlor; B. Legally enforceable debts owing *272 by the Settlor and such expenses of administration of the Settlor's estate as the successor Trustees may deem proper and reasonable; C. Any or all taxes owing by the Settlor at her death or lawfully imposed by reason of her death, including * * *
On December 22, 1986, decedent executed three Assignments of Interest (assignments), one for each of her three children, whereby each child received an irrevocable .0055 fractional interest (irrevocable interest) in the corpus of the revocable trust, or, such greater or lesser fractional interest therein necessary to convey corpus of $ 10,000 in value to each child. Three identical assignments were executed by decedent on behalf of the children on January 15, 1987. Each assignment provided in relevant part as follows: The undersigned Settlor, exercising her reserved power to designate beneficiaries and to set over to them irrevocably fractional interests in the trust estate, hereby assigns, conveys and sets over irrevocably to [name of child] an undivided .0055 fractional interest in and to the corpus of the trust estate existing as of the date of this assignment, thereby irrevocably entitling the assignee to the income derived *273 by such fractional interest and the vested interest in the principal pertaining thereto.
Decedent died testate on September 13, 1987. The estate tax return filed by the Estate of Erma M. Kisling included the value of decedent's interest in the revocable trust but did not include the value of the irrevocable interests transferred by decedent to her children in 1986 and 1987 totaling $ 60,000. Since there is no dispute between the parties as to any material fact, a decision herein can be rendered as a matter of law via action on a motion for summary judgment in respect of the issue before us. Rule 121(b). That issue is whether the agreed values of the six irrevocable interests transferred by decedent to her children are includable in the gross estate by virtue of the interaction of sections 2035 and 2038. Section 2035(a) requires that the value of the gross estate include the value of any interest in property transferred by the decedent within 3 years of the decedent's death. That section, however, is limited by subsections (b) and (d), which provide in relevant part, as follows: (b) Exceptions. -- Subsection (a) shall not apply -- * * * (2) to any gift to a donee made *274 during a calendar year if the decedent was not required by section 6019 (other than by reason of section 6019(2)) to file any gift tax return for such year with respect to gifts to such donee. * * * * * * (d) Decedents Dying After 1981. -- (1) In general. -- Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981. (2) Exceptions for certain transfers. -- Paragraph (1) of this subsection and paragraph (2) of subsection (b) shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent.
Thus, although section 2035(a) does not ordinarily apply to the estate of a decedent dying after December 31, 1981, as was the case herein, or to the transfer of an interest in property for which no gift tax return was required to be filed, it does apply where the value of an interest in property transferred by the decedent is included, or would have been included, in the gross estate under the provisions enumerated in *275 section 2035(d)(2). Of the various sections so enumerated, we are concerned herein with section 2038, which provides in relevant part: Sec. 2038. Revocable Transfers. (a) In General. -- The value of the gross estate shall include the value of all property -- (1) Transfers after June 22, 1936. -- To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3-year period ending on the date of the decedent's death.
Respondent contends that the six assignments of fractional interests of the revocable trust during 1986 and 1987 constituted a relinquishment of the decedent's powers over the transferred property under section 2038(a)(1). *276 Consequently, respondent argues that the value of the six fractional interests ($ 60,000) must be included in decedent's gross estate. Petitioner, on the other hand, contends that the transfers of those interests should be characterized as withdrawals of principal by the decedent, followed by gifts of that principal to her children and that, therefore, such gifts are not includable in the gross estate by virtue of section 2035(d)(1). In taking this position, petitioner relies upon Estate of Jalkut v. Commissioner, 96 T.C. 675 (1991). In Jalkut, the decedent created a revocable trust, to which he transferred his entire estate, appointing himself as the sole trustee with power to "amend or revoke [the trust] in whole at any time or in part from time to time". Estate of Jalkut v. Commissioner, 96 T.C. at 676. Thereafter, the decedent executed an amendment to the trust which provided in pertinent part that: During the life of the Grantor, the Trustees shall pay to the Grantor from the trust estate, the income and such sums from the principal as he may request. [Id.]
The decedent subsequently established *277 two irrevocable trusts (the family trusts), one for the benefit of four of his grandchildren, and one for the benefit of two of his children, which, in his capacity as trustee of the revocable trust, he funded by transferring shares of a mutual fund and cash (the initial transfers) from the revocable trust. On account of the decedent's deteriorating health, he was later replaced as trustee with two cotrustees who made additional cash transfers to the family trusts. The decedent died within 3 years of the transfers to the family trusts. With respect to the initial transfers, we concluded that, in substance, the decedent had made withdrawals from the revocable trust followed by gifts over to the family trusts, stating: At the time the transfers were effected, the decedent was the sole permissible distributee of the income and principal of the revocable trust. Under these circumstances, we agree with petitioner that the gift transfers could only have been effected pursuant to the decedent's power to withdraw income and principal from the trust. Accordingly, we conclude that the decedent exercised his power to withdraw assets from the trust and subsequently made gift transfers *278 in his individual capacity directly to the respective donees. By characterizing the transactions effected in 1984 as withdrawals preceding direct gift transfers from the decedent, it necessarily follows that the transfers do not constitute a relinquishment of the decedent's power to alter, amend, revoke, or terminate the trust with respect to the transferred assets as contemplated under section 2038. Because the withdrawn assets were not subject to inclusion in the gross estate pursuant to section 2038, section 2035(d)(2) does not control and the gifts are excluded from the gross estate under section 2035(d)(1). [96 T.C. at 685.] However, with respect to the transfers effected by the two cotrustees who replaced the decedent as trustee, we reached the opposite conclusion, holding that: the transfers by the trustees to persons other than the decedent cannot properly be characterized as withdrawals by the decedent. Rather, such transactions must be considered a relinquishment by the decedent, through the trustees, of his power to alter, amend, revoke, or terminate the trust with respect to the transferred assets as contemplated in section 2038(a). *279 * * * [96 T.C. at 685.]
Petitioner, emphasizing substance over form, maintains that the transfers herein, like those in Jalkut, constituted a withdrawal of assets from the trust, followed by gifts to the respective donees. We disagree. A critical distinction between Jalkut and the present case is the fact that, in Jalkut, the decedent was given the express power, as settlor, to effect withdrawals of principal, whereas, in this case, the decedent possessed no such power to remove assets, short of terminating her share of the trust. That the trustees were granted the power to "make * * * distributions of property in cash, in kind or partly in each" did not confer, on decedent herein, the power to effect a distribution of assets, either to herself, or to anyone else. Moreover, in marked contrast to the transfers in Jalkut, where assets were actually removed from the revocable trust and placed in the family trusts, the assets "transferred" in this case remained, in undivided fractional portions, within the trust. The fact that the donees' interests in the trust assets were irrevocable and were to be administered by the trustees *280 as separate irrevocable trusts has no bearing upon the question of withdrawal, a word which by its very nature implies a more complete separation. Finally, unlike the situation in Jalkut, the revocable trust herein was structured in such a way as to allow for the assignment of undivided fractional interests in trust assets as well as to permit the decedent to amend, alter, or modify the trust. Proceeding by way of such an assignment enabled the decedent to make gifts that qualified for the $ 10,000 annual exclusion of section 2503(b) without the need to sell, divide, or withdraw any assets from the trust. Thus, both in substance and in form petitioner chose a path which accomplished that objective. To equate the substance of decedent's action with a withdrawal of assets from the trust followed by transfers to the family trusts, as petitioner would have us do, would make meaningless the application of the relinquishment element of sections 2038 and 2035(d)(2) to most actions of a settlor in respect of the power to alter, amend, or revoke a trust. This is precisely the path we refused to follow in Estate of Jalkut v. Commissioner, supra, in *281 rejecting the taxpayer's contention that the transfers by the trustees after the decedent became incompetent should be treated as withdrawals of trust assets by the decedent. In so doing, we articulated the approach we adopt in resolving the issue before us herein by stating: As a final matter, we reject petitioner's argument that we should disregard the form of the transactions effected in 1985 in favor of their substance. The tax implications associated with the utilization of limited or incomplete inter vivos transfers in estate planning are distinctly articulated in the controlling statutory provisions. To the extent that the decedent elected to enjoy the advantages relating to the utilization of a revocable trust, his estate must endure the tax disadvantages arising from that election as well. In this regard, the means for insuring that annual exclusion gifts will not be included in the gross estate cannot be viewed as a mere "superficial formality." [Estate of Jalkut v. Commissioner, 96 T.C. at 686.]
We hold that the value ($ 60,000) of the fractional interests "transferred" by the decedent to her children in 1986 and 1987 must be included *282 in her gross estate. In accordance with the foregoing, petitioner's motion for summary judgment is denied, and the issue of law presented by such motion is resolved in favor of respondent. In order to permit petitioner to substantiate the payment of State death taxes in accordance with the qualified adjustment of that item in the notice of deficiency, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect at the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩