32 F.3d 1222
 74 A.F.T.R.2d 94-5672
 Erma M. KISLING, Deceased; William L. Kisling, Jr.,
Personal Representative; John W. Kisling,
Personal Representative; and Rosemary
Kisling Doerr, Personal
Representative, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellee.
 No. 93-3528.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1994.
Filed Aug. 10, 1994.
 
 John L. Sullivan, St. Louis, MO, argued, for appellants.
 Curtis C. Pett, Dept. of Justice, Washington, DC, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 The taxpayer in this case, the estate of Erma M. Kisling, appeals a decision of the United States Tax Court granting summary judgment to the Commissioner of Internal Revenue. On two separate occasions, both of which occurred within three years of her death in 1987, Mrs. Kisling executed three identical irrevocable assignments of fractional interests in the corpus of her trust, one to each of her children. The three children, serving as the personal representatives of the estate, omitted the assigned interests from the gross estate for the computation of estate taxes, but the Internal Revenue Service determined otherwise. The IRS sent a deficiency notice to one child, William L. Kisling, Jr., with a copy to the estate's lawyer. The personal representatives contested the IRS's ruling and argued that sending the notice of deficiency to only one of them was insufficient. The Tax Court held that notice to one of the personal representatives served as notice to all. In addition, it held that the interests transferred were includable in the gross estate under Sections 2035 and 2038 of the Internal Revenue Code, because the assets were never actually severed from Mrs. Kisling's trust. We reverse.
 
 I.
 
 2
 In February of 1986, Mrs. Kisling amended and restated a revocable trust she had created in 1981. The trust instrument included several provisions which provided Mrs. Kisling, as the Settlor, with the power to create irrevocable, fractional shares in the trust for her lineal descendants and their spouses and also provided her with the power to alter, amend, or modify the trust at will.[1] The trust instrument also provided that the beneficiaries of the fractional interests would receive any income attributable to those interests.[2]
 
 
 3
 Mrs. Kisling exercised her power of assignment in December of 1986 when she executed three Assignments of Interest, one for each of her three children. Each child received an irrevocable fractional interest in the corpus of the trust worth approximately $10,000. Mrs. Kisling repeated this process in January of 1987. Each assignment stated that:
 
 
 4
 The undersigned Settlor, exercising her reserved power to designate beneficiaries and to set over to them irrevocably fractional interests in the trust estate, hereby assigns, conveys and sets over irrevocably to [name of child] an undivided .0055 fractional interest in and to the corpus of the trust estate ... existing as of the date of this assignment, thereby irrevocably entitling the assignee to the income derived by such fractional interest and the vested interest in the principal pertaining thereto.
 
 
 5
 Mrs. Kisling died testate in September of 1987. Her estate filed an estate tax return which included the value of the interest in the revocable trust remaining in Mrs. Kisling's name at the time of her death as part of her gross estate. The return did not include the value of the irrevocable interests, totalling $60,000, transferred by Mrs. Kisling to her children in 1986 and 1987.
 
 
 6
 The Internal Revenue Service sent a tax-deficiency notice to William L. Kisling, Jr., one of the beneficiaries of the fractional interests, and one of the three personal representatives of the estate. The notice stated that the fractional interests Mrs. Kisling had assigned before her death were taxable as part of her gross estate under Sections 2035 and 2038 of the Internal Revenue Code. Thus, according to the IRS, the value of Mrs. Kisling's estate was $60,000 more than that included in decedent's estate tax return.
 
 II.
 
 7
 Under Section 2001 of the Internal Revenue Code, the taxable estate of every decedent who is a resident of the United States is subject to the federal estate tax. The Code defines the taxable estate as the gross estate less deductions. I.R.C. Sec. 2051. The gross estate includes the value of all interests in property which belong to the decedent at the time of death. I.R.C. Secs. 2031, 2033. In addition, under Section 2035(a), all transfers made within three years of the decedent's death are includable in the gross estate, unless they are excluded under another provision of the Code. Section 2035(b)(2) exempts from the estate tax gifts for which the decedent was not required to file a gift tax return. For transfers made after December 31, 1981, Section 2035(b) excludes the first $10,000 per year, per donee. Section 2035(d)(1) further limits 2035(a) by providing that, generally, gift transfers made after December 31, 1981, are not taxable, unless they fall into the provisions enumerated in Section 2035(d)(2). Thus, such gifts are generally not includable in the gross estate of a decedent, unless they are recaptured under another provision of the Code. Jalkut v. Commissioner, 96 T.C. 675, 679, 1991 WL 64935 (1991).
 
 
 8
 Sections 2035 and 2038 of the Code apply to the transfers in this case. Even though Mrs. Kisling made the transfers at issue within three years of her death, they are not taxable, under Section 2035(d)(1), unless they are recaptured pursuant to the sections enumerated in 2035(d)(2). I.R.C. Sec. 2038 is one of those sections. Section 2035(d) states:
 
 
 9
 SEC. 2035(d). DECEDENTS DYING AFTER 1981.--
 
 
 10
 (1) IN GENERAL.--Except as otherwise provided in this subsection, subsection (a) shall not apply to the estate of a decedent dying after December 31, 1981.
 
 
 11
 (2) EXCEPTIONS FOR CERTAIN TRANSFERS.--Paragraph (1) of this subsection and paragraph (2) of subsection (b) shall not apply to a transfer of an interest in property which is included in the value of the gross estate under section 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent.
 
 Section 2038(a)(1) states in part:
 
 12
 The value of the gross estate shall include the value of all property--
 
 
 13
 ... [t]o the extent of any interest therein of which the decedent has at any time made a transfer ... where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power ... to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3-year period ending on the date of the decedent's death.
 
 
 14
 Under Section 2038, transfers made during the life of the decedent are includable in the gross estate if enjoyment of the transferred property is limited or subject to change, because the decedent retained power to alter, amend, revoke, or terminate the transfer or relinquished that power within three years of her death--even if the decedent does not exercise those powers. Jalkut, 96 T.C. at 682, 1991 WL 64935, at *----. Whether or not the decedent's actions qualify as a transfer turns on the actual terms of the trust. Id. at 684, 1991 WL 64935, at *----.
 
 
 15
 In Jalkut, the Tax Court applied Sections 2035 and 2038 to two sets of gift transfers from a trust made within three years of the decedent's death. It looked at the first set of transfers made by the decedent and, after concluding that the decedent was the sole permissible distributee of the income and principal of the revocable trust, it determined that the transfers could only have been made pursuant to the decedent's power to withdraw both income and principal from the trust. On the basis of this conclusion, the Tax Court held that the decedent had exercised his power to withdraw assets and had then made transfers to the donees. The Tax Court characterized these gifts as "withdrawals preceding direct gift transfers by the decedent," and reasoned that it "necessarily follow[ed] that the transfers [did] not constitute a relinquishment of the decedent's power to alter, amend, revoke, or terminate the trust ... as contemplated under section 2038." Id. at 685, 1991 WL 64935, at *----.
 
 
 16
 The Tax Court distinguished those transfers from a second set of transfers made by substitute trustees after the decedent was pronounced unfit to manage his own affairs. The substitute trustees had the power to distribute income and principal to both the decedent and his descendants. According to the Tax Court, transfers by the trustees to persons other than the decedent could not properly be categorized as withdrawals by the decedent. Instead, those transfers were actually a relinquishment by the decedent, through the trustees, of his power to alter, amend, revoke, or terminate the trust with respect to those assets. As a result, those assets, if retained by the decedent, would have been taxable as part of his gross estate, and should continue to be taxable as such. Id. at 685-86, 1991 WL 64935, at *----.
 
 
 17
 Since the Jalkut case, two other decisions have been rendered which are relevant to our determination of whether Mrs. Kisling's transfers are exempt under Sections 2035 and 2038. In Estate of Barton v. Commissioner, T.C.Memo. 1993-583, 1993 WL 503909, the Tax Court considered whether gifts of stock transferred from a decedent's revocable trust within three years of her death were includable in her gross estate. The government argued that Barton had relinquished her powers with respect to the stocks, and therefore, the stocks were includable in the gross estate. The Tax Court looked at the terms of Barton's trust and determined that she had retained, for herself, the power to terminate the trust and to invade the corpus. Then it distinguished a relinquishment of power from an exercise of power, and determined that when Barton withdrew stock from the trust and transferred it to named donees, she had exercised, not relinquished, the powers defined in her trust. Thus, the Tax Court determined that Barton's stock transfers were not includable in her gross estate. In Barton, the Tax Court referred specifically to its opinion in Estate of Kisling, 1993 WL 208890 and distinguished Kisling by noting that Mrs. Kisling had not retained an express power to withdraw trust principal and had reserved only a power of revocation, and by relying on what it had found in Kisling to be an incomplete separation of the irrevocable fractional interests from the remainder of the trust, which was still subject to revocation.
 
 
 18
 In McNeely v. United States, 16 F.3d 303 (8th Cir.1994), this Court reversed a Tax Court opinion which had held certain transfers to be part of the gross estate. The dispute in McNeely concerned two transfers of marketable securities made by McNeely within three years of her death. After determining that McNeely had retained the power to invade the trust corpus at will, we looked to the terms of the trust itself. Article Two of that trust agreement stated "that the trustee 'shall pay to me, or one or more other persons, such sums from the principal of the trust estate as I may from time to time request in writing.' " Id. at 305. Again, the government argued that this trust was distinguishable from Jalkut and that the assets in question should be included in the gross estate. We disagreed. The language of McNeely's trust made clear that no distribution of assets could be made without McNeely's direction. Ibid. Moreover, we held that McNeely had not relinquished any retained powers when transferring the marketable securities, but had actually exercised the power to invade the corpus at will. Ibid.
 
 III.
 A.
 
 19
 The estate first contests the sufficiency of the deficiency notice mailed by the IRS to one of the estate's personal representatives, arguing that, notwithstanding the estate's timely filing of a petition for redetermination of the deficiency in the Tax Court, the IRS was obligated to send notices to each of the three personal representatives. We note that the IRS sent the notice to William L. Kisling, Jr., the first personal representative listed on the estate tax return. The estate tax return did not specify which of the three addresses was the official one, nor did the estate notify the IRS of an official address. The purpose of a notice requirement is to advise the taxpayer that the Commissioner has determined that a deficiency exists. Jarvis v. Commissioner, 78 T.C. 646, 655-56, 1982 WL 11081 (1982). By providing notice to William Kisling, one of the estate's personal representatives and a fiduciary of the estate, the IRS gave the estate sufficient notice of a tax deficiency. Therefore, we affirm the holding of the Tax Court that notice to one of the personal representatives provided sufficient notice to the estate of any estimated deficiency and the necessity for a response.
 
 B.
 
 20
 Next, the estate challenges the Tax Court's holding that the fractional assignments are subject to the estate tax. Mrs. Kisling was the settlor of a revocable trust under which she retained the power to alter, amend, or modify the trust in any manner, as well as the power to make irrevocable assignments of shares to her lineal descendants. In 1986 and 1987 she made six assignments of irrevocable, undivided interests in the trust to each of her three children. As a practical matter, these assignments created separate and distinct irrevocable trusts.
 
 
 21
 We hold that the terms of Mrs. Kisling's trust did give her the power to invade the corpus and make withdrawals without terminating her interest in the trust entirely. Under Section B, Item Four, of Mrs. Kisling's trust, she retained the power to amend, alter, or modify the trust in any manner as it applied to those shares in which she had retained an interest. Ante, at 1224 n. 2. The stated purpose of her reservation of this right was to facilitate the transfer of interests in the trust to her designated beneficiaries. This power of modification was unrestricted, and therefore included a power to revoke the trust. Austin Wakeman Scott & William F. Fratcher, The Law of Trusts, Sec. 331.2, at 385 (4th ed. 1989).[3] See also Restatement (Second) of Trusts Sec. 331, comment h (noting that when the power to modify is without restriction, it includes a power to revoke). This general reservation of the power to revoke the trust includes a power to revoke the trust in part by making withdrawals from the trust. Scott & Fratcher, supra, Sec. 330.11 at 370-71.[4] When Mrs. Kisling reserved the unrestricted power to modify the trust, her power of modification included a power to revoke the trust or to make withdrawals from it.
 
 
 22
 Having established that Mrs. Kisling had the power to make withdrawals from her trust without revoking her trust in its entirety, we now turn to the manner in which Mrs. Kisling exercised that power. Mrs. Kisling exercised her power to create fractional interests on two occasions, by assigning interests in the trust to her children. Those interests were assigned to a separate irrevocable trust, and a separate tax return was filed for the revocable trust. Moreover, the children received the income those fractional interests earned. The fractional interests were, in substance, separate and distinct from the remaining corpus of the revocable trust. Moreover, even though the withdrawals in this case did not occur in the same manner as those in McNeely, the specific design of Mrs. Kisling's trust accomplished the same practical result. The fractional-interest portion of the trust functioned in the same way it would have if the decedent had gone through the form of withdrawing the fractions from the initial revocable trust and then created a new irrevocable trust. What Mrs. Kisling essentially did was to create a trust which gave her both the unrestricted power to modify that trust and the power to effect separate transfers of assets. Therefore, when she created the fractional interests, she did not relinquish a power to modify a previously transferred interest; she exercised a power to make an irrevocable transfer to other persons.
 
 IV.
 
 23
 We agree with the Tax Court that the deficiency notice mailed to William L. Kisling, Jr., was sufficient. We also hold that the decedent's trust and transfers were, in substance, not different from those at issue in McNeely, and we decline to draw a line which is overly formalistic. Therefore, we hold that the property transferred in 1986 and 1987 is not includable in the gross estate.
 
 
 24
 The decision of the Tax Court is reversed, and the cause remanded to that Court for entry of judgment consistent with this opinion.
 
 
 
 *
 SECTION A
 ITEM ONE. This amendment and restatement has been made to provide terms for both a revocable trust as to the shares retained by the Settlor and an irrevocable trust as to the shares to be created for the benefit of Settlor's lineal descendants and spouses of lineal descendants. Settlor intends by this instrument to provide a method whereby gifts may be made through the creation of irrevocable fractional interests in the property subject to the trust. After the creation of irrevocable fractional interests, the trust would thereafter be administered by the Trustee as both a revocable trust as to the retained shares of the Settlor and as an irrevocable trust as to the shares created for the benefit of Settlor's lineal descendants and spouses.
 ITEM FOUR. This trust as stated and the interests herein are vested, subject to the express conditions and reservations that:
 
 
 A
 The Settlor, acting alone, may at any time during her lifetime revoke this trust as to those shares in which she has retained an interest for her life, thereby terminating the interest both as to income and principal as to such shares, and receive as her own property both the principal and income assignable to such shares then in the hands of the Trustee and her sole receipt shall be a full and complete discharge to the Trustee. Such right may be exercised by an instrument in writing executed by the Settlor and delivered to the Trustee
 
 
 B
 The Settlor may at any time or from time to time by instrument in writing executed and delivered to and executed by the Trustee amend, alter or modify the trust in any manner as it applies to those shares in which she has retained an interest for her life. Further, Settlor may from time to time, by assignment in writing delivered to the Trustee, irrevocably assign any interest in which she has retained an interest for her life to any of the beneficiaries designated in Item One of this instrument and, when acknowledged by the Trustee, shall constitute a termination of any interest of the Settlor in any such assigned interests. It is the purpose of the Settlor in reserving this right to facilitate the transfer of interests in the trust to the designated beneficiaries from time to time
 
 
 [2]
 
 SECTION B
 ITEM TWO. At any time during the continuation of this trust the Settlor may, by an instrument in writing, designate additional beneficiaries of this trust to receive vested fractional interests in the income and principal of the trust estate. After the receipt by the Trustee from the Settlor of a fractional interest designation to a beneficiary, the Trustee shall thereafter pay to such beneficiary, or to such beneficiary's successors in interest, all of the income attributable to such fractional interest so long as the Settlor shall live. Such payments of income shall be made at least quarterly.
 During the lifetime of the Settlor, the Trustee shall not encroach upon the principal of the trust estate in relation to the fractional share of any such beneficiary designation.
 Upon the death of the Settlor, the Trustee shall distribute to a beneficiary, or such beneficiary's successors in interest, the accumulated income, if any, and principal attributable to any transferred fractional beneficial interest.
 Each beneficiary designation pursuant to this agreement shall be determined to be indefeasibly vested both as to income and principal and assignable in all respects by any beneficiary owning any such interest.
 
 
 [3]
 This passage reads:
 Where the settlor has reserved power to modify the trust, and the power of modification is unrestricted, it would seem that he can revoke the trust. In such a case undoubtedly he can so modify it as to exclude all the beneficiaries and make himself the sole beneficiary and impose a duty on the trustee to reconvey the trust property to him. It seems clear, therefore, that an unrestricted power to modify includes a power to revoke the trust. (Footnote omitted.)
 
 
 [4]
 The passage reads:
 The settlor may by the terms of the trust reserve power to revoke the trust in part. Thus he may reserve power to withdraw part of the trust property from the trust, thereby terminating the trust as to the part withdrawn. The reservation of a power to withdraw property from time to time from the trust gives the settlor power to terminate the trust completely if he so desires. Where he simply reserves a power in general terms to revoke the trust, he ordinarily has power to revoke it in part by withdrawing some of the property from the trust. (Footnotes omitted.)