OPINION. HaReon, Judge: The petitioners concede that the net value of the corpus of the Vose Family Trust at the time of decedent’s death is includible in his gross estate under the provisions of section 811 (c), Internal Revenue Code,[2] because of the reservation by him in the trust instrument of the income of the trust for life. They contend, however, that the net value of the trust estate to be included in the gross estate is the fair market value of the trust corpus less the amount of legal encumbrances against it as of the date of decedent’s death; that the so-called “certificates of indebtedness” constituted legal encumbrances; and that the respondent erred in his determination of the value of the trust corpus to be included in decedent’s gross estate, by reason of his failure to reduce such value by $200,000, the face amount of the certificates outstanding at the time of decedent’s death. The Vose Family Trust had its inception in the desire of decedent to avoid income tax on amounts he distributed annually among members of his family. The attorney who prepared the trust instrument testified that it was one of several plans prepared by him for setting up decedent’s property in such a manner as to reduce his income tax and allocate certain portions of it to the persons who were the recipients of his bounty. The attorney was a lecturer on trusts at the Northern University Law School and had had over 25 years’ experience with trusts and the liability of trusts. We think it is obvious that the draftsman of the trust in question could have accomplished the objective sought by the decedent by having him make an irrevocable transfer of the income-producing property to a trust created by him, and providing in the trust instrument that certain portions of the income from the trust corpus should be paid to members of decedent’s family and the remainder to the decedent. We are convinced from an examination of the trust instrument that he did not adopt this simple procedure because he thought he could best serve his client by devising some plan which in his opinion would result not only in tax savings to decedent during his lifetime, but also to his estate after his death. While recognizing that taxpayers have the legal right to decrease the amount of what otherwise would be their taxes by means which the law permits, this and other courts have ofttimes stated that transactions entered into for the purpose of avoiding taxes must be scrutinized with particular care. The avoidance-of-tax feature of the trust instrument executed by the decedent in December, 1935, is contained in the last paragraph, wherein it is provided that, in addition to all other obligations, the trustees shall from time to time upon the request of the decedent, execute and deliver to him “certificates of indebtedness” in the form thereto annexed in such amounts as he shall from time to time request and payable to such persons as he shall nominate, but not, in any event, in an aggregate sum of more than $300,000. Each certificate stated that the Yose Family Trust “is indebted to” the person designated therein in a specified amount “to be paid out of the corpus of the trust upon its termination,” with “interest” at the rate of 6 per cent per annum payable quarter annually. In Commissioner v. Estate of Church, 335 U. S. 632, and Estate of Spiegel v. Commissioner, 335 U. S. 701, the Supreme Court of the United States, stated that the taxability of a trust corpus under the provisions of section 811 (c) of the Internal Revenue Code “depends upon the nature and operative effect of the trust transfer” and that in applying this section courts must look “to substance not to form.” And in Goldstone v. United States, 325 U. S. 687, the same Court said, with reference to this section, that it “sweeps into the gross estate all property the ultimate possession or enjoyment of which is held in suspense until the moment of the decedent’s death or thereafter. * * * Testamentary disposition of an inter vivos nature cannot escape the force of this section by hiding behind legal niceties contained in devices and forms created by conveyancers.” The petitioners’ contention that the value of the trust corpus should be reduced by the face amount of the “certificates of indebtedness” in determining the net value to be used for estate tax purposes is bottomed on the premise that they evidenced a valid, legal, and enforceable indebtedness due from the trust to the holders of the certificates at the time of decedent’s death. If this were true, they would be entitled to prevail. Estate of Rose M. Harter, 3 T. C. 1151, 1158. But the fact that the certificates were labeled “certificates of indebtedness” is not conclusive of their true character. See John Wanamaker Philadelphia v. Commissioner, 139 Fed. (2d) 644, 646; United States v. Title Guarantee & Trust Co., 133 Fed. (2d) 990; and Brown Rogers-Dixon Co. v. Commissioner, 122 Fed. (2d) 347, and the provision therein that the trust “is indebted to” the person designated does not necessarily create a debt. The sole asset of the trust during the years 1936 to 1943, inclusive, was the land and building transferred to it by the decedent and its income during those years was derived from the rental of this property. No moneys, or anything else, were loaned or transferred to the trust by the certificate holders. If they made no loans or transfers, how did an “indebtedness” arise ? The obvious answer is that there was no real “indebtedness” and no real debt owed by the trust to the persons who were named in. the certificates, either at the time the decedent caused them to be issued, or at any time thereafter, or at the time of decedent’s death. Drury v. Hartigan (Mass.), 43 N. E. (2d) 660. Never having had the use of any money loaned by the certificate holders, the trust never owed them any “interest” as such. The provision for “interest at six per cent” was inserted for the obvious purpose of providing a means of measuring the amount of income which would be paid annually to certificate holders, i. e., 6 per cent of the face amount of each certificate. The provision for the issuance and delivery of the “certificates of indebtedness” was merely a device adopted by decedent’s attorney to give the appearance of a debtor-creditor relationship when it did not in fact exist. Disregarding form and giving effect to substance, it constituted a retention by decedent of the right to designate those members of his family whom he desired to receive income of the trust and the amounts each was to receive. It was a right to designate beneficiaries of the trust and not creditors. The fact that it was clothed in the garb of an evidence of indebtedness is immaterial. Decedent exercised this right on 30 different occasions from the time the trust was created in 1935 until his death in 1943 to either create beneficial interests or add to interests theretofore created. At the time of his death he had the unexercised right to issue certificates in the aggregate amount of $100,000 and thus alter the beneficial interests theretofore created by him or create new interests. Any residue of income or corpus of the trust not disposed of through the issuance and delivery of the certificates passed under a power of appointment by will reserved in the trust deed and exercised by decedent in his will. His death, therefore, fixed and determined the proportionate interests of all beneficiaries in the trust income and corpus. Cf. Commissioner v. Chase National Bank, 82 Fed. (2d) 157; certiorari denied, 299 U. S. 552. As we view the provision for the issuance and delivery of the “certificates of indebtedness,” and the certificates themselves, they merely furnish another reason for the inclusion of the value of the corpus of the trust, without reduction, in the gross estate of the decedent under the provisions of section 811 (c). Petitioners, in conceding that the value of the corpus of the trust is includible under subsection (1) of section 811 (c) because of the reservation of the right to income for life, apparently overlook that it is also includible under subsection (2) because of the reservation of the right, by deed or will or through the medium of the so-called “certificates of indebtedness,” to designate the persons whom he desired to possess or enjoy the trust property and income. The latter right, standing alone, would be sufficient to require the inclusion of the value of the trust corpus in the decedent’s gross estate. Where such a right is retained in connection with a transfer in trust, section 811 (c) provides that “the value of the gross estate of the decedent shall be determined by including the value at the time of his death * * * to the extent of any interest therein of which the decedent * * * has at any time made a transfer, by trust or otherwise * * In other words, the value to be included in the gross estate is the value at date of death of the property transferred to the trust. Milliken v. United States, 283 U. S. 15, 22; Helvering v. Hallock, 309 U. S. 106, 111; In re Kroger’s Estate, 145 Fed. (2d) 901, 907. That value is $220,000 ($250,000 the fair market value of the transferred property at date of death, less the outstanding mortgage of $30,000), as respondent determined. Cf. Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U. S. 108. Accordingly, the respondent’s determination is sustained. The respondent, in determining the deficiency, did not allow any credit for state inheritance and succession taxes paid. Petitioners claim a credit of at least $2,037.16. This matter was left open for the parties to agree upon under Eule 50, and for that reason, Decision will be entered under Rule 50. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * * * * * * * * (c) Transfers in Contemplation of, or Takins Effect at Death. — To the extent of any interest therein of 'which the decedent * * * has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy tbe property or the income therefrom.