Eric S. WHITE, Administrator, C.T.A., of the Estate of Lucy Lee Bennett, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 92–11672–RCL.

United States District Court, D. Massachusetts.

March 30, 1995.

Gerald B. O'Grady, III, Tyler & Reynolds, P.C., H. Theodore Cohen, McGregor & Shea, P.C., Boston, MA, for plaintiff.

Susan M. Poswistilo, Asst. U.S. Atty., Boston, MA, Henry J. Riordan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

LINDSAY, District Judge.

Report and recommendation accepted.

*REPORT AND RECOMMENDATION RE: DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 23); PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY # 13 )*

BOWLER, United States Magistrate Judge.

Pending before this court are cross motions for summary judgment in the above styled action to recover federal estate taxes. Defendant United States of America ("defendant") filed a motion for summary judgment seeking to dismiss this action. (Docket Entry # 23). Plaintiff Eric S. White, Administrator, C.T.A., of the Estate of Lucy Lee Bennett ("plaintiff") opposes summary judgment (Docket Entry # 26) and moves for summary judgment to recover federal estate taxes, interest and penalties, if any, on amounts of $113,032.57 and $3,026.33 paid by plaintiff in 1991 together with accrued interest. (Docket Entry # 14). Defendant opposes the motion. (Docket Entry ## 20 & 24). After conducting a hearing on plaintiff's motion for summary judgment, this court took the motion under advisement. (Docket Entry # 27). This opinion also addresses defendant's motion for summary judgment. (Docket Entry # 23).

## BACKGROUND

On July 31, 1957, Lucy Lee Bennett, a/k/a/ Lucy Lee Perry ("Bennett"), signed an indenture establishing a revocable trust ("the trust"). Under the fifteenth article, Bennett reserved the right to amend the trust with a written instrument delivered to the trustees. In order to amend the trust, the trustees had

to receive the written instrument.[1] In addition, any amendment would not effect any prior lawful act made by the trustees. The pertinent language reads that:

> The Donor reserves the right by written instrument delivered to the Trustees hereunder to alter, amend or revoke this Indenture in whole or in part, but without effect upon any lawful act of the Trustees prior to the receipt of such instrument.

(Docket Entry # 24, Ex. A).

By written instrument dated September 5, 1980, Bennett amended the trust to delete the third and fourth articles and to substitute the following language as the third article:

> During the lifetime of the Donor and while she is married the Trustees shall distribute from principal the sum of [$6,000] per annum in securities and/or cash to Carol Lee Herbel, daughter of the Donor, Eric S. White and Joseph N. White, sons of the Donor, Brian C. Herbel, Bradley N. Herbel, Sarah W. White, Emily S. White and David T. White, grandchildren of the Donor, and to any other grandchildren of the Donor, and to any other grandchildren of the Donor subsequently born.

(Docket Entry # 24, Ex. C). The September 1980 amendment set the date for the distributions, exclusive of the first distribution, as "immediately after the first of the successive years." It is undisputed that Bennett remained married from the date of this amendment to her death. (Docket Entry # 16).

By written instrument dated August 9, 1982, Bennett made another amendment to the trust by: (1) adding the names of two donees; (2) directing that the missed 1981 and 1982 distributions be made together; and (3) directing that the 1983 and subsequent distributions be made with the amounts set forth in the September 1980 amendment, albeit to the enlarged list of donees. The August 1982 amendment reads, in part, as follows:

> Whereas no principal distributions were made under Article Third during the year 1981, I direct that the 1981 distributions and the 1982 distributions shall be currently made together and the 1983 and subsequent distributions shall revert to the amounts provided in Article Third but to the enlarged list of Donees.

(Docket Entry # 24, Ex. D).

On January 30, 1987, Bennett died. At the time of her death, the trustees had made distributions to the designated donees for the years 1981, 1982, 1984 and 1985. Significantly, however, the trustees had not made the distributions for the years 1983, 1986 and 1987 despite the language that the trustees "shall" make such distributions on "the first of the successive years." (Docket Entry # 16).

After Bennett's death, the trustees distributed the 1983, 1986 and 1987 missed distributions to the donees. On or about October 1, 1987, plaintiff filed for an extension of time and paid an estate tax of $910,000. In December 1987 plaintiff filed an estate tax return on form 706. Therein, plaintiff reported an estate tax liability of $813,756.27 and claimed a refund of $96,243.53 in light of the prior payment of $910,000. (Docket Entry # 24, Ex. J & S; Docket Entry ## 15 & 16).

In February 1988 the Internal Revenue Service ("the IRS") paid the estate a refund of $96,243.53 with interest of $2,098.42, resulting in a total payment of $98,341.95. On schedule K of form 706, plaintiff listed as a debt of the decedent, $180,000 for the distributions to the donees made after Bennett's death under the trust for the years 1983, 1986 and 1987. Plaintiff described the $180,000 debt on the schedule as:

> Distributions to decedent's issue required by Second Amendment dated September 5, 1980 to Trust u/i dated July 31, 1957 but not in fact made during decedent's lifetime. $54,000 for the years 1983, 1986 & 1987.

(Docket Entry # 24, Ex. J & S; Docket Entry # 15).

In 1990 the IRS audited plaintiff's form 706. The IRS disallowed the $180,000 deduction set forth in schedule K. In its explanation of the adjustment, the IRS stated that

---

1. Hence, the fact that Bennett may have attempted unsuccessfully to amend the trust in early 1986 is immaterial. Defendants fail to offer any valid written instrument in accordance with the fifteenth article whereby Bennett directed the trustees to delay dispensing future distributions.

the $180,000 deduction for the distributions not made during Bennett's lifetime were not allowable under 26 U.S.C. § 2053(c)(1)(A). The IRS therefore included the $180,000 amount for the distributions in the gross estate. (Docket Entry # 24, Ex. J & O; Docket Entry # 15)

On November 8, 1990, the IRS sent plaintiff a statutory notice of a $79,559.89 estate tax deficiency. The estate agreed to pay the deficiency with interest. On January 14, 1991, the IRS assessed a $79,559.89 deficiency in estate tax and $3,472.68 in interest. On March 19, 1991, the estate paid the IRS $113,032.47 and on May 22, 1991, the estate paid an additional $3,026.33.[2] As a result, as of October 26, 1992, the estate had paid in full the estate tax plus the deficiency. (Docket Entry # 24, Ex. O & S).

In February 1992 plaintiff filed form 843 seeking a refund of the $113,032.47 and $3,026.33 payments with interest. Plaintiff provided the IRS with a detailed explanation as to why the $180,000 amount of the distributions was a valid and enforceable claim against the trust at the time of Bennett's death and, therefore, properly excluded from the date of death value of the trust. Plaintiff alternatively sought inclusion of the $180,000 amount as a schedule K debt. (Docket Entry # 24, Ex. Q).

By letter dated May 11, 1992, the IRS disallowed the claim for a refund. (Docket Entry # 24, Ex. R). This action for a refund pursuant to 26 U.S.C. § 6532(a)(1) followed.

### DISCUSSION

While both parties move for summary judgment (Docket Entry ## 13 & 23), this court analyzes the cross motions for summary judgment separately and under different frameworks. With regard to defendant's motion for summary judgment, plaintiff bears the underlying burden of proof and, hence, must present definite and competent evidence to survive summary judgment. *Webb v. I.R.S.*, 15 F.3d 203, 205 (1st Cir. 1994) (citing *Bonilla–Aviles v. Southmark*

*San Juan, Inc.*, 992 F.2d 391, 393 (1st Cir. 1993)).

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in favor of the nonmoving party. *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation*, 931 F.2d 162 (1st Cir.1991).

In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir. 1992) (citing *Anderson*). "A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies*, 882 F.2d 993 (5th Cir.1989) (citing *Anderson*).

Where, as here, the taxpayer brings an action for a refund, there is a presumption that the IRS' decision, which denied the inclusion of the $180,000 amount in schedule K and rejected the argument that the $180,000 should be excluded from the calculation of the fair market value of the gross estate, is correct. *See United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976) (presumption of correctness attaches in refund suit and taxpayer bears burden of proof in refund suit); *Connor v. C.I.R.*, 847 F.2d 985, 989 (1st Cir.1988); *Lefebvre v. C.I.R.*, 830 F.2d 417, 419 n. 3 (1st Cir.1987) ("Commissioner's deficiency determination is presumed correct, and, in seeking a redetermination, the taxpayer bears the burden or proof to show otherwise"); *Estate of Todisco v. C.I.R.*, 757 F.2d 1, 6 (1st Cir.1985) ("basic rule in all tax cases" is that "burden of proof rests on the taxpayer"); *United States v. Rexach*, 482 F.2d 10, 16 (1st Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 540, 38 L.Ed.2d

2. According to plaintiff, on May 6, 1991, the IRS issued a bill for interest and penalties in the amount of $3,026.33. (Docket Entry # 1, ¶ 17).

On June 17, 1991, the IRS issued a penalty in the amount of $795.60, which it abated on April 27, 1992. (Docket Entry # 24, Ex. S).

330 (1973); *Compton v. United States,* 334 F.2d 212, 216 (4th Cir.1964).

■ Turning to the correctness of the decision to disallow inclusion of the $180,000 as a schedule K deduction, section 2053 [3] authorizes deductions from the taxable estate for "claims against the estate ... as are allowable by the laws of the jurisdiction," in this case Massachusetts. 26 U.S.C. § 2053(a)(3).

First and foremost, the $180,000 amount was a claim against the trust not a claim against the estate under section 2053. The trust is a separate and distinct entity from the estate. The distributions from the trust were mandatory. Use of the word "shall" without reserving a right to revoke a distribution demonstrates the mandatory nature of the distributions. Each claim therefore vested in a particular beneficiary on the first of the year with regard to that year's distribution.

Second, even assuming the existence of a claim against the estate and the applicability of section 2053, section 2053(c)(1)(A) expressly limits the reach of deductions for "claims against the estate" by making such claims subject to a consideration requirement. Thus, such claims are "deductible only if the agreement giving rise to the claim was 'contracted bona fide and for an adequate and full consideration in money or money's worth.'" *Estate of Huntington v. C.I.R.,* 16 F.3d 462 (1st Cir.1994) (quoting section 2053(c)(1)(A)). The purpose of section 2053(a)(1)(C)'s limitation is to prevent deductions of gifts or testamentary dispositions under the guise of being a claim or debt against the estate. *Estate of Huntington v. C.I.R.,* 16 F.3d at 465.

In *Huntington,* the First Circuit disallowed an estate tax deduction for an amount paid in settlement of a claim after decedent's death based on an oral agreement between decedent and her husband to execute mutually reciprocal wills. Although the First Circuit recognized that the decedent received a financial benefit from the oral, reciprocal will agreement, the court affirmed the disallow-

ance inasmuch as the oral agreement was not the kind of " 'bona fide' contractual obligation for which section 2053 allows a deduction." *Estate of Huntington v. C.I.R.,* 16 F.3d at 465–466 & 469.

Bennett's directions to distribute the $180,000 amount were not made for a bona fide contractual obligation nor given for adequate consideration. Family transactions are subject to particular scrutiny. *Estate of Huntington v. C.I.R.,* 16 F.3d at 466. Bennett received no consideration for her instructions to the trustees to make the distributions for 1983, 1986 and 1987 to her designated donees. The underlying nature of the transactions was, in every sense, a gift. Consequently, even assuming *arguendo* the applicability of section 2053, section 2053(c)(1)(A) bars a schedule K deduction for the donative distributions at issue.

■ Plaintiff's alternative theory, that the $180,000 missed distributions reduce the includable net value of the trust in the estate, is well taken. Plaintiff asserts, and this court agrees, that the fair market value of the trust on the date of Bennett's death does not include the vested and legally enforceable obligations of the trust to issue the missed distributions in the amount of $180,000.[4]

The definition of the gross estate is the value of the decedent's property at the time of death. 26 U.S.C. § 2031(a). Under section 2033, the value of the gross estate includes "the value of all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2033. Similarly, section 2036 provides the general rule with respect to trust instruments with a retained right to income that, "The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer." 26 U.S.C. § 2036.

The value of an item of decedent's property, such as the trust at issue, "is the fair market value" at the time of decedent's death, absent an alternative valuation meth-

---

3. Unless otherwise noted, all sections referred to without reference to a particular title are taken from Title 26 of the United States Code.

4. Whether such distributions fall within Bennett's gross estate by operation of section 2038(a)(1) is a separate issue.

od inapplicable to the instant dispute. *See generally* 26 C.F.R. §§ 20.2031–1(b) & 20.2031–2.[5] The "fair market value" is the price at which the property would change hands between a willing buyer and a willing seller ... both having reasonable knowledge of relevant facts." 26 C.F.R. § 20.2031–1(b). Logically, the fair market value of an item of property does not include legally enforceable debts. Rather, it is the net, not the gross, value of the property.

And, in *Estate of Harter v. C.I.R.*, 3 T.C. 1151, 1944 WL 165 (1944), the United States Tax Court ("Tax Court") addressed the issue of whether to deduct from the gross value of a trust at the time of the decedent's death the value of unpaid promissory notes held by the trust's beneficiaries which remained unpaid on the date of the decedent's death. The court in *Harter* recognized the distinction between the net value of the trust and the decedent's gross estate. Furthermore, in order to determine the net value of the trust, the court in *Harter* offset the value of the unpaid notes against the gross value of the trust because such notes were "legal and enforceable." Thus, the value of the unpaid notes was not included in the decedent's gross estate. *Estate of Harter v. C.I.R.*, 3 T.C. at 1158–1159; *see also Estate of Vose v. C.I.R.*, 14 T.C. 113, 1950 WL 122 (1950), *as modified*, 20 T.C. 597, 1953 WL 78 (1953) (trust certificates constituted prior charge on trust corpus to the extent of the face value of the certificates in determining value of trust for inclusion in gross estate).

The missed distributions at issue were legally enforceable obligations of the trust. The trust is enforceable under Massachusetts law. *See Ventura v. Ventura*, 407 Mass. 724, 555 N.E.2d 872, 874–875 (1990); *Sullivan v. Burkin*, 390 Mass. 864, 460 N.E.2d 572, 575 (1984); Mass.Gen.L. ch. 203, § 25. The language of the trust required the trustees to make the distributions on the first of the

year as to each year's distribution. Once this date passed, Bennett had transferred her control over the amount of the distributions. Otherwise stated, Bennett's power lapsed on the first of the year with respect to the distribution at issue. Bennett could not have canceled or amended the amount of a missed distribution which, under the mandatory language of the trust, became binding once the date for the distribution passed. Bennett therefore made a completed gift for federal estate tax purposes.

Although revenue rulings are neither precedential nor binding, *see Salomon, Inc. v. U.S.*, 976 F.2d 837, 841 (2nd Cir.1992); *Disabled American Veterans v. C.I.R.*, 942 F.2d 309, 314 (6th Cir.1991); *Magneson v. C.I.R.*, 753 F.2d 1490, 1493 (9th Cir.1985); *Peoples Trust Co. of Bergen County v. United States*, 444 F.2d 193, 197 (3rd Cir.1971), this court finds instructive *Revenue Ruling 84–25* which involved the tax consequences of unpaid promissory notes on the date of the decedent's death which were not held in a trust. The ruling states that, "in the case of a legally enforceable promise for less than an adequate and full consideration ..., the promisor makes a completed gift ... on the date when the promise is binding and determinable in value rather than when the promised payment is actually made."[6] *Rev.Rul. 84–25*, 1984–1 C.B.; *see also C.I.R. v. Copley's Estate*, 194 F.2d 364, 367 (7th Cir.1952).

Defendant correctly notes that in general the federal estate tax and the federal gift tax "are construed *in pari materia*." *Harris v. C.I.R.*, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950). A completed gift for gift tax purposes occurs when the "donor has so parted with dominion and control as to leave him no power to change its disposition." 20 C.F.R. § 25.2511–2(b). A gift is incomplete for gift tax purposes when the "donor reserves the power to revest the beneficial title to the property to himself." 20 C.F.R.

---

5. It is the valuation of the trust and the effect of its obligation to make a distribution for the specified amount of money which is at issue rather than the valuation of the particular securities held by the trust.

6. In this ruling, the promissory notes ran directly from the donor/decedent to the donees and the ruling therefore states that the assets used to pay

the proceeds of the notes are a part of the decedent's gross estate. *Rev.Rul. 84–25*, 1984–1 C.B. In the case at bar, however, the assets used to satisfy the amounts of the missed distributions are part of the trust and, as legally enforceable obligations, reduce the value of the trust on the date of death.

§ 25.2511–2(c); *see also* 26 C.F.R. § 25.2511–2(f). As discussed *supra,* Bennett did not reserve the right to revest the missed distribution once the date for the distribution had passed. She executed a trust which required the trustees to distribute a certain amount of money to designated donees on a particular date. The trustees had a fiduciary obligation to abide by the terms of the trust. *See Harrison v. Marcus,* 396 Mass. 424, 486 N.E.2d 710, 714 n. 11 (1985). After the date passed for a distribution, Bennett no longer had the power to change the designated amount to the designated donee.

■ The remaining issue is whether the 1983, 1986 and 1987 missed distributions are subject to the three year rule of 26 U.S.C. § 2038(a)(1).[7] As explained in *Estate of Jalkut,* 96 T.C. 675, 1991 WL 64935 (1991), section 2035(a) "provides for the inclusion in the gross estate of any gifts made by the decedent within 3 years of death." *Estate of Jalkut,* 96 T.C. at 678 & 683. Subsection 2035(d)(1), however, exempts the provisions of section 2035(a)(1) from estates where, as here, the decedent dies after December 31, 1981. Subsection 2035(d)(2) then provides that subsection 2035(d)(1) is inapplicable to "a transfer of an interest in property which is included in the value of the gross estate under sections 2036, 2037, 2038, or 2042 or would have been included under any of such sections if such interest had been retained by the decedent." 26 U.S.C. § 2035(d)(2). The end result for present purposes is that gift transfers made within three years of the date of the decedent's death will be included in the decedent's gross estate "if such property interests are included in the gross estate

under section 2038." *Estate of Jalkut,* 96 T.C. at 683–684.

"Ultimately," the language of the trust is controlling in determining whether transfers effected within three years of the decedent's death are included in the gross estate by operation of section 2038. *Estate of Jalkut,* 96 T.C. at 684; *accord Estate of McNeely v. United States,* 16 F.3d 303, 305 (8th Cir.1994) (determination of whether transfer made within three years of death falls within gross estate turns on " 'particular terms of the trust' "); *Estate of Barton v. C.I.R.,* 1993 WL 503909 (T.C. Dec. 9, 1993). As previously addressed, the trust mandates distributions on the first of the year with regard to that year's distribution. On this date, Bennett's power lapsed and she relinquished her ability to revoke the amount of the distribution in question to the designated donee. Similar to the 1985 transfers at issue in *Jalkut,* once the date of a distribution had passed, Bennett had relinquished her power to revoke the amount of the distribution and, under the language of the trust, the trustees were required to make the distribution. *Estate of Jalkut,* 96 T.C. at 685.

Bennett's relinquishment on the first day of the year pertaining to the missed distribution at issue was not an exercise of her power to invade the trust corpus at will. On this date and under the terms of the trust, she could no longer alter or change the amount of the distribution at issue. The trustees were obligated to issue the distribution. The fifth article of the trust expressly authorizes the trustees "to pay from principal upon the death of the Donor ... any gift ... made by the Donor during her lifetime." The third article of the trust mandated the distribution

---

7. Section 2038 states, in part, that:

the value of the gross estate shall include that value of all property ... To the extent of any interest therein of which the decedent has at any time made a transfer ... where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power ... by the decedent ... to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3–year period ending on the date of the decedent's death.

26 U.S.C. § 2038(a).

Succinctly summarized in *Jalkut,* due to section 2038, "the value of the gross estate includes the value of any interest transferred by the dece-

dent, the enjoyment of which is subject to change by virtue of the decedent's retention of the power to alter, amend, revoke, or terminate." *Estate of Jalkut,* 96 T.C. 675, 680, 1991 WL 64935 (1991). As previously discussed, Bennett's power with regard to the missed distributions lapsed on the first of the year pertaining to the distribution at issue. Hence, she no longer had an interest therein at her death. And, the value of the trust on the date of death did not include the legally enforceable obligation to issue the missed distributions. Rather, the question is whether she relinquished her power to revoke within three years of the date of her death vis-a-vis the missed distributions.

of a specific sum of money from principal to specific donees on the first of the successive year as to the distribution at issue. The trustees had a fiduciary obligation to the beneficiaries/donees to carry out the settlor's directions "as expressed in the terms of the trust." *Harrison v. Marcus,* 396 Mass. 424, 486 N.E.2d 710, 714 n. 11 (1985). After the date passed for a distribution, under the terms of the trust, Bennett lacked the ability to invade or change the amount of the distribution to the designated donee. She therefore relinquished her power at that time.

Consequently, with respect to the 1986 and 1987 missed distributions, Bennett's relinquishment occurred within three years of the date of her death. The amounts of the 1986 and 1987 distributions but not the 1983 distribution are therefore includable in Bennett's gross estate by virtue of the three year recapture provision of section 2038.

In sum, defendant met its summary judgment burden as to the correctness of the IRS' deficiency assessment with respect to the 1986 and 1987 missed distributions. Plaintiff fails to demonstrate the incorrectness of the IRS' deficiency assessment as to the 1986 and 1987 distributions. Plaintiff is not entitled to a schedule K deduction for the 1986 and 1987 distributions and such distributions are includable in the gross estate by virtue of the three year rule of section 2038(a)(1). Defendant, however, fails to meet its summary judgment burden with regard to the correctness of the IRS' deficiency assessment as to the exclusion of the 1983 distribution from Bennett's gross estate.

As to plaintiff's motion for summary judgment (Docket Entry # 13), plaintiff fails to set forth a genuine issue of material fact that the IRS' inclusion of the 1986 and 1987 distributions in the gross estate was incorrect. Plaintiff does, however, meet his burden of showing an entitlement to summary judgment as to the 1983 distribution. Plaintiff adequately dispels the presumption of the correctness of the IRS' decision to include

the 1983 distribution in Bennett's gross estate and establishes that there is no genuine issue of material fact that the IRS' decision to include the 1983 distribution in Bennett's gross estate was incorrect as a matter of law. Remaining issues include the amount of the deficiency assessment in light of this ruling.

*CONCLUSION*

In accordance with the foregoing discussion, this court **RECOMMENDS**[8] that defendant's motion for summary judgment (Docket Entry # 23) and plaintiff's motion for summary judgment (Docket Entry # 13) be **ALLOWED** in part and **DENIED** in part.

---

8. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia-Copete,* 792 F.2d 4, 6 (1st Cir.1986).